Bobbie **MANIVANH** a/k/a Bobbie Brandley, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–07–00921–CR.

Court of Appeals of Texas, Dallas.

Nov. 21, 2008.

Discretionary Review Refused Sept. 23, 2009.

Sharon E. Ramage, Sharon M. Ramage, PC, Frisco, TX, for Appellant.

John R. Roach, Sr., Collin County Dist. Atty., John R. Rolater, Jr., Andrea L. Westerfeld, Collin County Asst. Dist. Attys., McKinney, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice FITZGERALD.

Bobbie Manivanh a/k/a Bobbie Brandley appeals her conviction for possession with intent to deliver four grams or more but less than two hundred grams of ketamine, a penalty group 1 substance, with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(10) (Vernon Supp.2008), § 481.112(a), (d) (Vernon 2003). After the jury found appellant guilty, the trial court assessed her punishment at seven years' imprisonment. Appellant brings two issues on appeal, asserting the evidence is legally and factually insufficient to support her conviction. We affirm the trial court's judgment.

## BACKGROUND

This case arises out of the search of a house belonging to Toney Brandley, appellant's husband.

On September 6, 2002, Irving Police Detective John Montegudo interviewed two women arrested for forgery. They told Montegudo they had been given counterfeit identification cards and checks by Toney Brandley at a house in Plano. Montegudo drove the women to the house, and they identified the house and Toney Brandley's vehicle that was in the driveway. Montegudo obtained a warrant to search the house and arrest Toney Brandley. The affidavit in support of the warrant did not mention appellant.

On September 7, 2002, when the police arrived at the house, appellant and Toney Brandley were present, and they opened the door for the police. Inside the house,

the police found materials associated with forgery, including stolen identification cards and counterfeit checks and money orders. They also found drug-making equipment, including two pill presses in an upstairs bedroom with ketamine and MDMA (also known as ecstasy) powder and pills around them. In the closet of that bedroom, they found pills of ecstasy as well as powder containing ketamine. In another upstairs bedroom, the master bedroom, the police found appellant's purse on the bed, a credit card with appellant's name and photograph on the windowsill, and next to the credit card, a book titled "Secrets of Methamphetamine Manufacture, Including Recipes for MDA, Ecstacy, and Other Psychedelic Amphetamines." Inside that book were an invoice and a packing slip dated July 26, 2002 for a pound of sassafras root bark powder sold to appellant (sassafras oil contains safrole, which is the starting material for MDMA). In the same bedroom, between the mattresses of the bed, they found a plastic bag with tablets possibly containing either methamphetamine or ecstasy.[1] The police also found in the master bedroom a piece of paper with appellant's handwriting expressing her love for Toney Brandley and a computer disc for "Comp 101," a college course appellant was taking at the time of the search. Downstairs, in a kitchen cabinet, the police found an envelope addressed to appellant at that address sitting on a digital scale. In the same cabinet was a 7–Up bottle containing diphenhydramine, a chemical commonly used to dilute many drugs. Another room in the house was equipped for surveillance, containing monitors connected to cameras looking outside the house. Inside the garage, the officers found acetone and denatured alco-

1. One officer testified they contained methamphetamine, and another officer testified they contained ecstasy. It appears that the pills

found between the mattresses were not submitted for testing, and no expert testimony was elicited as to their composition.

hol, both of which are used in manufacturing methamphetamine, and they found powder under a flood lamp, which is a common way of drying drug powder.

Appellant testified she and Toney Brandley were married on July 2, 2002, and they first met about two years before that. After they got married, Toney Brandley continued to have many guests at the house, both male and female. Appellant did not associate with any of the guests, and she did not know any of their names. About two weeks after their marriage, appellant overheard a conversation about forgeries. After Toney Brandley left the house, she looked around the house and found some forged checks. Appellant immediately moved out of the house. Appellant did not change her mailing address, and she continued to receive her mail at the house. She testified the envelope addressed to her and found in the kitchen cabinet was a college textbook she had ordered. She stated she did not know anything about the drugs or pill presses or surveillance equipment and that she never saw such things when she lived there. She also testified the credit card found in the master bedroom was one she had left behind when she moved out. She also stated she did not purchase the sassafras and had never ordered any herbs. She testified she came to the house the night of the search to talk to Toney Brandley about saving their marriage.[2] She said that when the police arrived at the door, she was downstairs watching television and Toney Brandley was upstairs. She also testified she did not go upstairs that evening before the police arrived and that it was the police who took her purse into the upstairs bedroom.

2. Appellant testified she moved out soon after their marriage both because of Toney Brandley's forgery activities and because of the

The police arrested Toney Brandley that night, but they did not arrest appellant until two years later.

## SUFFICIENCY OF THE EVIDENCE

In her two issues, appellant contends the evidence is legally and factually insufficient to support her conviction.

In evaluating the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Bigon v. State,* 252 S.W.3d 360, 366 (Tex.Crim.App.2008). The factfinder is the exclusive judge of the evidence's weight and the testimony's credibility. *Margraves v. State,* 34 S.W.3d 912, 919 (Tex.Crim.App.2000); *see also* TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). We must defer to the factfinder's decisions on credibility and weight. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999).

In evaluating the factual sufficiency of the evidence, we view all the evidence in a neutral light and ask whether the evidence demonstrates the proof of guilt is so weak or the conflicting evidence is so strong as to render the verdict clearly wrong and manifestly unjust. *Roberts v. State,* 220 S.W.3d 521, 524 (Tex.Crim. App.), *cert. denied,* 552 U.S. 920, 128 S.Ct. 282, 169 L.Ed.2d 206 (2007); *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim. App.2006). We set aside a verdict only when, based on some objective basis in the record, we are able to say the great weight and preponderance of the evidence contradicts the verdict. *Watson,* 204 S.W.3d at 417. We are permitted to substitute our

number of women he continued to associate with after their marriage.

judgment for the factfinder's when considering credibility and weight determinations, but only to a very limited degree. *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006), *cert. denied,* 552 U.S. 842, 128 S.Ct. 87, 169 L.Ed.2d 66 (2007). However, we must give almost complete deference to the factfinder's decision when that decision is based upon an evaluation of credibility. *Lancon v. State,* 253 S.W.3d 699, 705 (Tex.Crim.App.2008).

The jurors were charged that they could find appellant guilty if they found beyond a reasonable doubt that appellant possessed ketamine with intent to deliver or that she was a party to Toney Brandley's possession of ketamine with intent to deliver by soliciting, encouraging, directing, aiding, or attempting to aid Toney Brandley's possession of ketamine with intent to deliver.

 To prove unlawful possession of a controlled substance, the State must prove: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. This evidence, whether direct or circumstantial, must establish to the requisite level of confidence that the accused's connection with the drug was more than just fortuitous. *Poindexter v. State,* 153 S.W.3d 402, 405–06 (Tex.Crim.App.2005). In this case, appellant was not in exclusive possession of the place where the controlled substances were found. Accordingly, we cannot conclude she had knowledge of and control over the contraband unless other direct or circumstantial evidence establishes appellant's possession of the drug beyond a reasonable doubt. The number of factors linking appellant to the contraband is less important than the logical force with which all the evidence, both direct and circumstantial, connects appellant to the contraband. *See Evans v. State,* 202 S.W.3d 158, 161–62 (Tex.Crim.App.2006). Possible

links recognized by Texas courts include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n. 12.

The contraband at issue was seized from the upstairs bedroom with the pill presses. Several factors provide circumstantial evidence that appellant possessed the drug or aided or encouraged Toney Brandley's possession of the drug. Appellant was present when the search was conducted, and the contraband was in plain view. Evidence that appellant was married to Toney Brandley, received her mail at the house, and had numerous possessions in the house and in the master bedroom upstairs indicates appellant had access to the upstairs area of the house where the drugs were found. Other drugs and drug paraphernalia, including a book on making drugs, were in the same room as appellant's purse, credit card, college-course computer disk, and the sheet of paper on which appellant had written that she loved Toney Brandley. Other drug parapherna-

lia as well as substances that may have been illegal controlled substances were in plain view throughout the house. That appellant aided Toney Brandley in the manufacture and possession of drugs was shown by the invoice and packing slip for sassafras root bark powder addressed to appellant and found inside a book describing how to manufacture ecstasy. Although appellant testified she moved out of the house two weeks after their marriage and six weeks before the police searched it, was unaware of the drug manufacturing occurring in the house, had not seen any of the drugs or drug paraphernalia before the police searched the house, and did not order the sassafras, the jury was free to disregard her testimony as not credible, and this Court should defer to the jury's credibility determinations. *See Lancon,* 253 S.W.3d at 705 (factual sufficiency review); *Margraves,* 34 S.W.3d at 919 (legal sufficiency review).

Appellant argues the Fort Worth Court of Appeals' case in *Brady v. State* is analogous to this case and, like *Brady,* this case should also result in acquittal. *See Brady v. State,* 771 S.W.2d 734 (Tex.App.-Fort Worth 1989, no pet.). In *Brady,* the police searched a home belonging to the defendant and her husband and found .71 ounces of marijuana under their bed and 2.15 pounds of marijuana growing in a greenhouse behind the house. *Id.* at 735. The defendant's husband testified that the marijuana was his, that she was ignorant of the marijuana under the bed and growing in the greenhouse, and that on occasion, she would destroy the marijuana plants she found. The defendant testified she had no knowledge or control of the marijuana found in the house and did not approve of her husband's use of marijuana. Five other witnesses testified the defendant did not use marijuana. *Id.* The Fort Worth court reversed and acquitted the defendant because (1) the State's circum-

stantial evidence failed to exclude every reasonable hypothesis other than the guilt of the defendant, and (2) the evidence failed to show the defendant's reasonable explanation—that she did not aid her husband in acquiring marijuana and did not approve of her husband's use and possession of marijuana—was false. *Id.* at 735–38.

We decline to follow *Brady.* First, the standard of review requiring reversal of circumstantial evidence cases unless the defendant's guilt is the only reasonable hypothesis has been overruled. *See Geesa v. State,* 820 S.W.2d 154, 161 (Tex.Crim. App.1991), *overruled on other grounds by Paulson v. State,* 28 S.W.3d 570, 573 (Tex. Crim.App.2000) (overruling *Geesa's* requirement that "reasonable doubt" be defined in the jury charge).

Second, the Fort Worth court's requirement that the State prove the defendant's reasonable explanation was false came from cases holding a defendant in a theft case who provides a reasonable explanation for his possession of recently stolen property may not be convicted of theft unless the evidence shows the explanation is false. *See Brady,* 771 S.W.2d at 738 (citing *Huff v. State,* 492 S.W.2d 532, 533 (Tex.Crim.App.1973)); *see also Bollinger v. State,* 224 S.W.3d 768, 777 (Tex.App.-Eastland 2007, pet. ref'd) (applying doctrine, concluding record showed explanation was false). That doctrine has no application to drug-possession cases. The doctrine is a counter to the inference of theft arising from unexplained possession of recently stolen property. *See Chavez v. State,* 843 S.W.2d 586, 588 (Tex.Crim.App. 1992) ("This rule of sufficiency is necessarily based upon a belief that those who steal property usually remain in possession of it for some time afterwards and that persons acquiring property honestly during such an interval are typically willing to explain

how they came by it."); *Havard v. State,* 972 S.W.2d 200, 202 (Tex.App.-Beaumont 1998, no pet.). In the theft cases applying the doctrine, whether the defendant possessed the stolen property is not the issue; it is whether the possession of the stolen property permits an inference that the defendant is guilty of theft of the property. No similar situation exists in this case. Here, the issue is whether appellant possessed the controlled substance. Whether a defendant has a reasonable explanation for possessing controlled substances challenges the allegation of the unlawfulness of the possession, not the possession itself. Appellant's "explanation" that she no longer lived in the house and was unaware the drugs were in the house is not an explanation for her possession, it is an argument that she did *not* possess the property.

The Fort Worth court also cited *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), for applying the doctrine to drug-possession cases. *Turner* involved a statutory inference of guilt in cases of possession of illegally imported narcotics. *See id.* at 400, 401–02, 90 S.Ct. 642 (discussing 21 U.S.C. § 174 (repealed 1970)). The statute permitted the jury to infer from the defendant's unexplained possession of a narcotic that the defendant knew the drugs had been illegally imported. *Id.* at 402, 90 S.Ct. 642. However, nothing in *Turner* indicates the statutory inference included the doctrine that if a reasonable explanation was not proved false by the State then acquittal was required. Also, even if the federal statute did include the requirement, no Texas statute requires acquittal of a drug defendant because the evidence failed to show a defendant's reasonable explanation was false. Accordingly, we decline to follow the Fort Worth Court of Appeals' application in drug-possession cases of the doctrine from theft cases that the failure of the evidence to prove false a defendant's

reasonable explanation for recent possession of stolen property requires acquittal.

Viewing all the evidence under the appropriate standards of review, we conclude the evidence is both legally and factually sufficient to sustain appellant's conviction. We overrule appellant's first and second issues.

We affirm the trial court's judgment.