AFFIRM; Opinion Filed November 5, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-01437-CR

**ARTHUR HENDERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the Criminal District Court No. 5
Dallas County, Texas
Trial Court Cause No. F09-58128-L

# OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion By Justice Lang-Miers

A jury convicted appellant Arthur Henderson of capital murder and the trial court sentenced appellant to life in prison. Appellant raises two issues on appeal arguing that the evidence was legally insufficient to support his conviction and that the trial court abused its discretion by admitting certain photographs into evidence. We resolve appellant's issues against him and affirm.

### SUFFICIENCY OF THE EVIDENCE

In his first issue appellant argues that the evidence is legally insufficient to support his conviction.

**Applicable Law and Standard of Review**

Appellant was indicted for capital murder for intentionally killing Salvador Alvarez by striking him with a metal tank and asphyxiating him with a strap while in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2012).

In reviewing a challenge to the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). We cannot substitute our judgment for that of the jury and instead must defer to the jury's determinations about the credibility of witnesses and the weight to be given to their testimony. *Montgomery*, 369 S.W.3d at 192. Our role "is simply to ensure that the evidence presented supports the jury's verdict and that the state has presented a legally sufficient case of the offense charged." *Id.*

**The Evidence**

On April 12, 2009, Easter morning, Dallas police found Alvarez's body tied up and bloody under a pile of blankets in his ransacked apartment. Jill Urban, M.D., the forensic pathologist who performed the autopsy in this case, testified that Alvarez was tied up with "fairly-elaborate bindings" that included handcuffs, luggage straps, and cords. Dr. Urban concluded that Alvarez died from blunt-force injuries and possible asphyxia. Dr. Urban testified that the propane tank admitted into evidence as State's Exhibit 127 could have caused the lacerations to Alvarez's head. Toxicology tests revealed that Alvarez had alcohol and cocaine or crack cocaine in his system.

Appellant, Alvarez, and a man named Joseph Edward Roling all lived in the Trinity Palms apartment complex. Roling, who goes by the nickname "White Boy Joe," testified that he was unemployed and selling crack at his apartment complex to make money at the time of Alvarez's murder. Roling had known appellant for a few months because Roling had sold appellant crack,

–2–

which appellant sometimes paid for by giving Roling "random stuff" like microwaves. Around midnight on April 11, 2009, which was the Saturday before Easter, Roling was outside "hustling" drugs when appellant approached him. Appellant told Roling that Roling's upstairs neighbor, Alvarez, wanted to buy some crack. The two men went upstairs, and Roling sold crack to Alvarez and left. Appellant was also smoking crack that night. Thirty minutes later appellant came to Roling's apartment and said Alvarez wanted to buy more crack, and the two men went back upstairs. On the way to Alvarez's apartment appellant told Roling that Alvarez had "nice stuff" and that appellant was going to "get" Alvarez. Roling assumed that appellant "was going to do what he usually does, you know, try to get some stuff and sell it." When they arrived, Alvarez was in the back room of his apartment near his computer. Appellant pushed Roling out of the way and hit Alvarez over the head with a small metal propane tank. Appellant and Alvarez started fighting. Roling got scared and left.

Around 2:00 a.m. on Easter Sunday, Roling and his brother walked to a convenience store. When they returned to their apartment they saw a truck backed up onto the grass near the apartment building. It is undisputed that Alvarez drove a green GMC pickup truck. Appellant approached Roling and said he was going to "take the truck." Appellant also said, "You know something about me, and you know I'm about to go to Oak Cliff," which Roling took as "[s]omewhat" of a threat (presumably that if the police found appellant, appellant would know that Roling told them where he was). Roling also noticed that appellant's hands were "real beat up" and swollen. Later that morning, the police arrived and knocked on Roling's apartment. Roling told them that he saw the truck outside, but was too scared to tell them what else he saw.

In August 2009 a homicide detective called Roling. Roling went to talk to the detective and told him what happened even though the detective did not promise "any type of deals or immunity." Later, shortly before appellant's trial, the prosecutor told Roling that he could not be charged with

selling or possessing narcotics in April 2009 without evidence other than Roling's testimony. But the prosecutor nevertheless gave Roling an "immunity agreement" for the month of April 2009 and asked the trial court to appoint an attorney for Roling, who was present during Roling's testimony at appellant's trial. Roling repeatedly testified that he was being "completely truthful" once he talked to the homicide detective.

Erin Kaschalk, a Dallas police officer, also testified for the State. Around 4:30 a.m. on April 12, 2009, she and her partner responded to a call from the Trinity Palms apartment complex about "individuals loading a green truck with things." When they arrived the green truck was gone but they were directed to Alvarez's apartment. Inside they found a butcher knife close to the door. In the back room they found Alvarez's body underneath a pile of blankets. He was handcuffed and covered in blood.

Portions of the transcript from the deposition of Jose Chavez, Alvarez's downstairs neighbor, were read to the jury. Chavez testified that on the night of the murder he heard a loud noise coming from the apartment above him, and a few hours later he saw a black man loading a television into his upstairs neighbor's green truck, so he called 911.

Steve Hough, a detective with the crime scene unit of the Dallas police department, investigated the crime scene in this case. Hough described the crime scene for the jury and identified State's Exhibits 15 through 81 as the crime scene photographs he took, including pictures of three cigarette butts that were collected as evidence.

Paula Autry testified that around 4:00 p.m. on Easter Sunday 2009 she was at a convenience store panhandling and prostituting to get money for drugs when appellant pulled up in a green truck and asked if she wanted to buy some pills. Later, around 10:00 p.m. that night, appellant returned to the convenience store parking lot in the green truck and asked Autry if she had a crack pipe. Appellant and Autry smoked crack together and then went to nearby gas stations and panhandled to

–4–

get more money for drugs. Once they had some money they drove to buy some drugs and on the way they saw a group of Mexicans standing in a yard. Appellant asked them if they wanted to buy the truck or "something off the truck." Appellant sold them the truck's battery and some tools that were in the back. The Mexicans gave appellant an older battery and jump started it so that he could keep driving the truck. When they arrived at a man named Jimmy's house to buy drugs, the truck died and had to be pushed out of the street. Appellant went inside to buy drugs and did not share any with Autry, so she left and returned to the convenience store. Autry identified appellant as the man she rode with, and she identified State's Exhibit 14 as a picture of the green truck he was driving.

Paul Ray Baker testified that he bought a green truck in April 2009 and removed the motor. Buying the truck got him "into a lot of trouble" because he was charged with receiving and possessing stolen property. Baker testified that appellant may have been the man who sold him the truck, but it was two years ago and dark outside when he bought it, so he could not be sure.

Dallas police officer Michael Gonzalez is a crime scene investigator who analyzed Alvarez's truck for evidence. He collected several pieces of evidence, including latent fingerprints and DNA samples. Officer Gonzalez identified State's Exhibit 131 as fingerprints he lifted from the exterior of the driver's door. Detective Michael Epple testified that appellant's fingerprints were found on the exterior of the driver's side door of the green GMC pickup truck that the police dusted for prints.

Detective Roberto Arredondo was the lead homicide detective who investigated Alvarez's murder. Arredondo recounted for the jury how his investigation led him to appellant. It started with the discovery of Alvarez's truck a few days after the murder, and was followed by talking to a series of witnesses including Autry and Baker, along with the discovery of a green notebook that appellant pawned that contained his Texas identification card. Arredondo also identified State's Exhibit 128 as a DVD of excerpts from his interview of appellant at the police station, and the DVD was played for the jury. During his interview appellant admitted knowing Alvarez and drinking with and talking

to him in the parking lot, but he denied going into Alvarez's apartment. Arredondo also testified that it is appellant's voice on the jail calls that were admitted into evidence without objection as State's Exhibits 132 and 133. In one of the jail calls appellant tells the woman on the other end of the line to make sure and tell someone named Matty that Matty was with appellant on Easter.

Courtney Ferreira, a forensic biologist and DNA analyst, was one of the witnesses who testified about the DNA evidence in this case. Ferreira testified that the DNA samples collected at the crime scene were compared to the DNA profiles for appellant, Roling, and Alvarez. Most of the DNA collected matched Alvarez's DNA profile, none matched Roling's DNA profile, and one sample matched appellant's DNA profile. The DNA sample that matched appellant's DNA profile was from a cigarette butt found on the floor in the back room of Alvarez's apartment.

Quincy Stoker, another resident of the Trinity Palms apartment complex, testified that after Alvarez's murder he saw appellant and noticed that his hands were really swollen and had "cuts and stuff on 'em." Stoker asked appellant what happened to his hands and appellant said he injured them fixing a car.

**Analysis**[1]

Appellant first argues that the evidence is insufficient to support his conviction because "the physical evidence collected in this case does not point to [a]ppellant as the perpetrator." More specifically, appellant argues that (1) his fingerprints were not found in Alvarez's apartment; (2) the only item found in Alvarez's apartment that contained appellant's DNA profile was a cigarette butt found on the floor, and it "could have come off of anyone's shoe because the grounds of that apartment complex are littered with cigarette butts"; (3) there is no evidence that any of Alvarez's

---

[1] At the outset, and without citing to any authority, appellant argues that the State was required to exclude every reasonable hypothesis raised by the evidence that tended to exculpate him. But the former standard of review requiring reversal of circumstantial evidence cases unless the defendant's guilt was the only reasonable hypothesis was overruled by *Geesa v. State,* 820 S.W.2d 154, 160–61 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State,* 28 S.W.3d 570, 573 (Tex. Crim. App. 2000); *Manivanh v. State,* No. 05-07-00921-CR, 2008 WL 4952837, at *4 (Tex. App.—Dallas Nov.21, 2008, pet. ref'd). We apply the appropriate standard of review.

–6–

property was pawned; and (4) appellant's fingerprint on Alvarez's truck door could have been left there at another time because the two men knew each other. Appellant also argues that other evidence is insufficient to support his conviction. For example, appellant argues that (1) the State's principal fact witnesses, Roling and Autry, were not credible because Roling was an admitted drug dealer and Autry was an admitted crack addict; (2) Roling's testimony "did not match the evidence at the crime scene" because Roling testified that Alvarez was doing drugs and sitting at his computer, but the police did not find any drugs or drug paraphernalia in Alvarez's apartment, nor did they find a chair or computer near Alvarez's desk; (3) the police did not find Autry's fingerprints in Alvarez's truck; (4) Baker could not positively identify appellant as the person who sold him Alvarez's stolen truck; and (5) Chavez did not positively identify appellant as the black man who was loading the television into Alvarez's truck. We disagree with appellant.

Roling testified that appellant had previously given him various items like microwaves in exchange for drugs. On the night of Alvarez's murder appellant told Roling that Alvarez had "nice stuff" and that appellant was going to "get him." Roling saw appellant hit Alvarez in the head with a propane tank and start fighting with him shortly before Alvarez was found dead. Autry testified that she rode around with appellant in Alvarez's green truck after the murder. Appellant's cigarette butt was found in Alvarez's apartment and his fingerprints were found on the door of the truck. After examining all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of capital murder as charged in the indictment beyond a reasonable doubt. As a result, we conclude that the evidence is legally sufficient to support appellant's conviction for capital murder. We resolve appellant's first issue against him.

In his second issue appellant argues that the trial court erred by allowing into evidence "objectionable photographs" taken of Alvarez at the medical examiner's office. He generally argues that the photographs should have been excluded under Texas Rule of Evidence 403 because they are "repetitious and highly prejudicial."

**Applicable Law and Standard of Review**

Relevant evidence may be excluded under rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *See Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). Relevant factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice include "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). "Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself." *Id.* Pre-autopsy photographs are generally admissible if they aid the jury's understanding of the victim's injuries. *See Matamoros v. State*, 901 S.W.2d 470, 476 (Tex. 1995) (photographs of victim's body at morgue before autopsy admissible because they "add to the jury's understanding of the nature of the wounds involved").

We review the trial court's ruling on the admissibility of photographs under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *See Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009).

**Analysis**

Appellant complains about the trial court's decision to overrule his timely objection under rule of evidence 403 and admit into evidence State's Exhibits 83–108 and 110–114.[2] During a sub rosa hearing on the issue of the admissibility of the photographs in question, the prosecutor explained that he and Dr. Urban reviewed 95 photographs and excluded photographs that were cumulative or showed injuries that appeared to be unrelated to the murder. Dr. Urban also testified about how the photographs at issue show certain wounds and help her describe "the overall condition of the body."

We cannot conclude that the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. The photographs at issue illustrate the medical examiner's testimony about Alvarez's wounds and portray "no more than the gruesomeness of the injuries inflicted by appellant." *See Williams*, 301 S.W.3d at 691. As a result, we cannot conclude that the trial court abused its discretion when it overruled appellant's objection and admitted into evidence State's Exhibits 83–108 and 110–114. *See id.* We resolve appellant's second issue against him.

**CONCLUSION**

We resolve appellant's issues against him and affirm.

ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111437F.U05

---

[2] Appellant generally describes the photographs as "33 color photographs." But in his appellant's brief he identifies 31 photographs, and the exhibits are displayed in the appellate record as black-and-white photocopies. As the court of criminal appeals has explained, "[i]f appellant believed that the colors in the actual photographs would have made a difference in our assessment of prejudice, then it was incumbent upon him to ensure that either the original photographs or color photocopies were included in the record." *Williams*, 301 S.W.3d at 690 n.6.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ARTHUR HENDERSON, Appellant

No. 05-11-01437-CR    V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 5 of Dallas County, Texas. (Tr.Ct.No. F09-58128-L).
Opinion delivered by Justice Lang-Miers, Justices O'Neill and FitzGerald participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 5, 2012.

ELIZABETH LANG-MIERS
JUSTICE