**Affirmed and Opinion Filed October 29, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-13-01486-CR
No. 05-13-01487-CR

**KENNETH RAY TURNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause Nos. F13-51238-H & F13-51239-H**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Bridges

Kenneth Ray Turner appeals his convictions for possession of cocaine with the intent to deliver in cause number 05-13-01486-CR and unlawful possession of a firearm by a felon in cause number 05-13-1487-CR. A jury convicted Turner, and the trial court sentenced him to thirty-five years' imprisonment for the possession of cocaine with intent to deliver and ten years' imprisonment for the unlawful possession of a firearm by a felon, to run concurrently. In two points of error, Turner challenges the sufficiency of the evidence to support both of the trial court's judgments. We affirm the trial court's judgments. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4.

On the morning of January 9, 2013, complainant, Maytrice Smith, called the Dallas Police Department regarding a domestic disturbance with a weapon. Dallas police officers

Robert Wilkerson and Stephen Cole responded and arrived at Smith's apartment around 5:50 a.m. When the officers knocked on the apartment door, Smith answered the door upset, and whispered that Turner was sitting on the commode, he had hit her the night before, and he had a loaded gun on the dresser in the bedroom. Both officers could see Turner in the bathroom because the bathroom door was ajar. The officers entered the apartment and Cole secured the weapon, a 9 mm Glock handgun loaded with hollow point bullets, from the bedroom. Wilkerson approached Turner while Cole interviewed Smith.

Smith told Cole that she and Turner both lived at the apartment together, they had argued the night before, Turner physically assaulted her, and when she tried to call for help, Turner took the phone away and would not allow her to call the police. Eventually, Smith and Turner both fell asleep, and when Smith awoke at 5:00 a.m., she called the police. While being interviewed by Cole, Smith told Cole that Turner had "dope" in the bedroom on the dresser.

Wilkerson made contact with Turner while he was in the bathroom. Assuming he was going to arrest Turner to prevent further family violence, Wilkerson escorted Turner into the bedroom so that Turner could get dressed. Upon entering the bedroom, Wilkerson observed a brown paper lunch bag, full of what he believed to be marijuana and crack, sitting on the dresser. Wilkerson reported that when asked, Turner retrieved his identification from a jacket on the bedroom floor. Wilkerson allowed Turner to dress before hand-cuffing him. Wilkerson then picked up the jacket from the floor and noticed it felt heavy. Before handing the jacket to Turner, Wilkerson examined the jacket for contraband and found another loaded handgun in the same pocket where Turner had earlier retrieved his identification; this one a Smith & Wesson .40 caliber pistol with a 13-round clip. Wilkerson placed Tuner under arrest, escorted Turner outside, and secured him in the patrol car.

After Turner was escorted outside, Smith told Cole there were more drugs in the bedroom, and said she did not want any of "his drugs" to remain in the apartment. She told Cole, "He's cooking the drugs all the time." She went into the bedroom and showed Cole where to find a black box that contained marijuana, crack cocaine, and other paraphernalia. Smith told Cole, "I don't want none of this in here. Take all that." Smith also directed Cole to a substantial amount of cash.

The State introduced evidence of Turner's prior convictions. Turner was convicted: 1) on July 6, 2004 for unlawful possession of cocaine with intent to deliver and received five years' imprisonment; 2) on July 6, 2004, for unlawful possession of PCP and received five years' imprisonment; 3) on October 29, 2004, for unlawful possession of codeine and received five years' imprisonment; 4) on September 18, 2008, for unlawful possession of MDMA 3, 4-methylenedioxy methamphetamine with intent to deliver and received ten years' imprisonment; 5) on September 18, 2008, for unlawful possession of 400 grams of cocaine with intent to deliver and received ten years' imprisonment; and finally 6) on September 18, 2008, for unlawful possession of a firearm by a felon and received four years' imprisonment. Turner testified he was released from prison in February 2011.

At trial, Marcella St. John, an undercover narcotics officer with the Dallas Police Department clandestine lab squad, testified concerning the packaging and sale of marijuana and crack cocaine. St. John testified cocaine is cooked into a solid "cookie" of crack and then further broken down into smaller sizes to be distributed. St. John testified "your street-level user" would not be in possession of a "cookie" because they are addicts and "they smoke it as soon as they get it." She further explained that finding a "cookie" indicates the person is a dealer. St. John testified the different colored baggies were used to indicate the amount of crack in each bag – "It's happening so fast . . . they don't want to have to think about it . . . ." St. John reviewed the

evidence found in the apartment—a scale, marijuana in various sized bags, various colored baggies, rocks of crack in various sizes, a bigger "cookie" of crack, the loaded handguns, the box—and stated, "it's my opinion, based on everything that I have in front of me, it's definitely the tools of the trade of somebody that's distributing."

Turner was charged with possession of cocaine with intent to deliver, use of a deadly weapon, and unlawful possession of a firearm by a felon. A jury convicted Turner on the possession of cocaine with intent to deliver and the unlawful possession of a firearm; these appeals followed.

In both points of error, Turner argues the evidence is insufficient to support his convictions for possession of cocaine with the intent to deliver and unlawful possession of a firearm by a felon. When reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). It is the responsibility of the jury to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. We may not substitute our judgment for that of the fact finder regarding the credibility of the evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The fact finder may choose to believe or disbelieve all or any part of any witness' testimony. *Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.—Dallas, 2003, no pet.).

Turner's first point of error argues the evidence is legally insufficient to prove his guilt beyond a reasonable doubt. Specifically, Turner complains the evidence fails to establish enough affirmative links to connect him with the cocaine found at the apartment.

To prove the unlawful-possession-of-a-controlled-substance element of the charged offense in this case, the State was required to prove that: 1) Turner exercised control, management, or care over the four grams or more of cocaine; and 2) Turner knew that the matter possessed was cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010); *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). Because Turner was not in exclusive control of the apartment, the State was also required to prove beyond a reasonable doubt that Turner's connection to the cocaine "was more than just fortuitous." *Id*. The number of factors linking Turner to the contraband is less important than the logical force with which all the evidence, both direct and circumstantial, connects Turner to the contraband. *Manivanh v. State*, 334 S.W.3d 23, 27 (Tex. App.—Dallas 2008, pet. ref'd). Possible affirmative links include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id*.

Turner argues the evidence fails to establish any affirmative links between him and the cocaine. We disagree. Viewed in the light most favorable to the verdict, the evidence reveals facts and circumstances which link Turner to the offense. Regarding Turner's right to possess the place where the drugs were found, although the apartment lease was not in Turner's name, Smith

reported she and Turner had been in a relationship "off and on" for over nine years and Turner's son was asleep on the couch. As for proximity, the apartment was very small and the bag with the marijuana and cocaine was in plain view and on the dresser beside the loaded weapon that Smith reported Turner used to threaten her. Both officers reported that Smith told them the drugs belonged to Turner and she wanted all of his drugs out of the apartment. Further, after Turner was handcuffed and taken out of the apartment, Smith voluntarily directed the officer to the hidden black box containing more drugs, paraphernalia, and a substantial amount of cash belonging to Turner. We conclude that these facts and circumstances sufficiently link Turner to the cocaine. *See Manivanh*, 334 S.W.3d at 27. Consequently, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. We overrule Turner's first point of error.

In his second point of error, Turner argues the evidence fails to establish the offense of unlawful possession of a firearm by a felon. Specifically, Turner argues there is no evidence affirmatively linking Turner to the firearms. The jury was charged, and found the evidence proved beyond a reasonable doubt, that Turner was a convicted felon and he intentionally or knowingly possessed a firearm after conviction and before the fifth anniversary of his release from confinement or parole following conviction of the felony. *See* TEX. PENAL CODE ANN. § 46.04 (West 2011). In cases involving unlawful possession of a firearm by a felon, we analyze the sufficiency of the evidence under the rules adopted for determining the sufficiency of the evidence in unlawful possession of a controlled substance cases. *See Young v. State*, 752 S.W.2d 137, 140 (Tex. App.—Dallas 1988, pet. ref'd).

Viewed in the light most favorable to the verdict, the evidence reveals facts and circumstances which link Turner to the firearms found in the apartment. The initial call to the Dallas Police Department was a request for assistance by Smith claiming Turner had physically

assaulted her and had a loaded weapon. The first handgun was found on the bedroom dresser, in plain view, next to a bag of contraband, exactly where Smith told the officers the gun was located. The second weapon was found in the same jacket pocket that Turner used to retrieve his identification when asked by the officer. We conclude that these facts and circumstances sufficiently link Turner to the firearms. *See Young*, 752 S.W.2d at 140. It is undisputed that Turner has multiple prior felony convictions within the temporal proximity to January 8, 2013. Consequently, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. We overrule Turner's second point of error.

We affirm the trial court's judgment.

DO NOT PUBLISH
TEX. R. APP. P. 47.
131486F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KENNETH RAY TURNER, Appellant

No. 05-13-01486-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F13-51238-H.
Opinion delivered by Justice Bridges.
Justices Francis and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered October 29, 2014.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KENNETH RAY TURNER, Appellant

No. 05-13-01487-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F13-51239-H.
Opinion delivered by Justice Bridges.
Justices Francis and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered October 29, 2014.