

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00135-CR

_____

KENNETH R. MCINTOSH JR., Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Court at Law No. 1
Parker County, Texas
Trial Court No. CCL1-19-0685

---

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant, Kenneth R. McIntosh Jr., was charged with obstruction of a highway or street. He entered a plea of not guilty. The jury found McIntosh guilty, and the trial court imposed a fine of $1,200 and sentenced him to 120 days of imprisonment probated for 15 months.

In four issues, McIntosh appeals the trial court's judgment.

## I.     Sufficiency of the Evidence – Issues 1 and 2[1]

In his first issue, McIntosh claims that the evidence is insufficient to support his conviction. In his second issue, he argues that no rational factfinder could have found him guilty of obstruction under the facts of this case. Because McIntosh's first and second issues challenge the sufficiency of the evidence, we will address them together.

### A.     Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

---

[1]Because we set out the facts in detail in McIntosh's sufficiency issues, we do not include a separate factual statement.

2

## B. Evidence of Obstruction

A person commits the offense of obstruction if, without legal privilege or authority, he intentionally, knowingly, or recklessly obstructs a highway or street to which the public or a substantial group of the public has access. Tex. Penal Code Ann. § 42.03(a)(1). "Obstruct" means to "render impassable or to render passage unreasonably inconvenient or hazardous." *Id.* § 42.03(b).

During trial, the jury learned that while making a delivery to Rodney and Leah Riedel in Parker County, McIntosh parked his 18-wheeler in the southbound lane of Zion Hill Road despite being warned about the road's dangerous conditions. Zion Hill Road is a two-lane country road that runs north and south. It has narrow shoulders that abruptly slope into a ditch. The speed limit on the road is 60 miles per hour. Because there are no lights on the road, it is very dark at night.

McIntosh parked his 18-wheeler on a spot on the road situated in a valley between two steep hills. Leah had warned McIntosh that it would be unsafe for him to park on the road. Specifically, she informed him that the road was "dangerous," and that people often sped down the road and "did not pay attention." While McIntosh's 18-wheeler was parked on the road, Binion Long crashed his pickup truck into the back of it.

Both McIntosh and the State presented expert testimony regarding the ability of other vehicles to safely pass McIntosh's 18-wheeler. Lee Jackson, an accident reconstruction expert for the State, testified that Long "had nowhere to go" when he

3

came upon McIntosh's parked 18-wheeler. Specifically, Jackson testified that, as it relates to Long's crashing into McIntosh's parked 18-wheeler, Long "couldn't go to the right, couldn't go to the left in oncoming traffic[, and] [a]n attempt to pass would have put [Long] dangerously close to the no passing zone." Jackson concluded that Long didn't have "any option at all" and that the 18-wheeler's "being in that location didn't leave him any options." Further, Jackson stated that due to the foggy weather condition present at the time of the accident and the fact that the 18-wheeler was parked at the bottom of a hill, Long had no way to know if a car was traveling in the northbound lane of the road, and that any attempt by Long to go around McIntosh's 18-wheeler was akin to his "taking [his] life into [his] own hands by going into the oncoming traffic lane and being involved in a head-on collision." In Jackson's opinion, McIntosh's parking of the 18-wheeler in the southbound lane of the road was a reckless act that created an extreme hazard for which there was no justification.

McIntosh called another accident reconstruction expert, Daniel Phillips, to testify on his behalf. On the one hand, Phillips testified that McIntosh's parked 18-wheeler did not create a hazard for other drivers, but he also testified that there was not enough room in the passing zone of the road for Long to maneuver around it.

The jury also heard testimony from Texas Department of Public Safety Trooper Lucious Pitts. Pitts was dispatched to the scene of the wreck. Pitts testified that as he approached the wreck, he observed that the roadway was wet and that his

4

visibility was diminished by mist and fog. Pitts stated that due to the weather conditions, he approached the wreck cautiously.

While at the scene, Pitts decided to check Long's truck's speedometer. Pitts observed that the speedometer was locked in place at "not exactly on," but not over, 55 miles per hour—meaning Long's truck was traveling under 55 miles per hour when it crashed into the back of McIntosh's 18-wheeler. Pitts determined that the 18-wheeler had been blocking the entire southbound lane of Zion Hill Road when the wreck occurred.

Pitts further testified that it would have been hazardous for Long to have attempted to drive around McIntosh's parked 18-wheeler because there was a steep ditch on the truck's right side and the oncoming traffic lane on the left side was on a steep hill that made it difficult to see oncoming traffic.

The jury also heard testimony from volunteer fireman Jerred Hicks. Hicks was also dispatched to the scene of the collision. Hicks testified that when he arrived, his visibility was "poor" due to fog and mist. Hicks stated that he could not see the wreck until he was within 150 to 200 feet of it. In his opinion, it was extremely unsafe of McIntosh to have parked on the roadway where the collision occurred.

## C. Analysis

McIntosh makes several arguments to support his sufficiency issue. First, he argues that the State "offered no evidence that the road was rendered impassable[, and that the] only fact of dispute was if the passageway was rendered unreasonably

5

inconvenient or hazardous." We disagree. The State's expert, Jackson, testified that Long "had nowhere to go" when he came upon McIntosh's parked 18-wheeler and that McIntosh's act of parking his 18-wheeler on the road was reckless and "extremely hazardous." Pitts testified that McIntosh's truck blocked the entire southbound lane of the road and that an attempt by Long to drive around the truck would have been "hazardous." Hicks testified that McIntosh's parking of his 18-wheeler on the road created "[e]xtremely unsafe" driving conditions. Even McIntosh's own expert testified that there was not enough room in the passing zone of the road for Long to have maneuvered around the 18-wheeler.

The State offered evidence that McIntosh's parked 18-wheeler rendered the road impassable, or at a minimum created unreasonably inconvenient or hazardous passage for any vehicle attempting to maneuver around it. *See Windham v. State*, No. 14-07-00193-CR, 2008 WL 2169918, at *3 (Tex. App.—Houston [14th Dist.] May 22, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that car stopped at night on a feeder road along a busy interstate highway rendered passage on the road unreasonably hazardous); *Lauderback v. State*, 789 S.W.2d 343, 346–47 (Tex. App.—Fort Worth 1990, pet. ref'd) (holding that blocking one lane of travel on a busy day is sufficient to constitute rendering passage unreasonably inconvenient or hazardous).

Second, McIntosh argues that the only evidence supporting his conviction is Long's crashing into the back of his 18-wheeler. He argues that the wreck was not his

6

fault but was due to Long's distracted driving. However, we need not consider whether McIntosh is correct that Long's alleged distracted driving is a reasonable alternative to his guilt of the offense of obstruction of a highway. Tex. Penal Code Ann. § 42.03. The State was not required to produce evidence excluding every other reasonable hypothesis except that of guilt. The "outstanding reasonable hypothesis of innocence" construct as a method of appellate review for evidentiary sufficiency is no longer applied in Texas criminal cases. *Manivanh v. State*, 334 S.W.3d 23, 28 (Tex. App.—Dallas 2008, pet. ref'd) (citing *Geesa v. State*, 820 S.W.2d 154, 160 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000)). Moreover, even if Long had not crashed into McIntosh's parked 18-wheeler, McIntosh could still be found guilty of the offense of obstruction; a person commits an offense if he obstructs a highway or street to which the public or a substantial group of the public has access. Tex. Penal Code Ann. § 42.03. Causing an accident is not an element of the offense of obstruction. *See id.* Therefore, evidence that McIntosh obstructed Zion Hill Road was sufficient to support his conviction for obstruction of a highway or street. *See id.*

Finally, McIntosh argues that under *Threadgill v. State* and *Morrison v. State*, cases in which the courts held the evidence insufficient to support the appellants' convictions for obstruction, this court cannot uphold his obstruction conviction. *See Threadgill v. State*, 241 S.W.2d 151, 152–53 (Tex. Crim. App. 1951); *Morrison v. State*, 71 S.W.3d 821, 827 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). We disagree

7

because those cases are distinguishable from the facts of this case. *Threadgill* construed a now-repealed penal code article that criminalized willful obstruction of a public road. *Threadgill*, 241 S.W.2d at 152. In *Threadgill*, the appellant sold fireworks from two semi-trailers that were parked on the shoulder of a road. *Id.* Customers stopped their vehicles along and on the road, creating a traffic hazard when some of the customers' cars obstructed a part of the paved portion of the road. *Id.* The State charged Threadgill with obstructing the roadway instead of charging the customers whose cars were in the roadway. *Id.* The Court of Criminal Appeals agreed with Threadgill's contention that the facts of the case did not show an obstruction of a public highway because Threadgill did not park his trailers in such a way as to obstruct passage. *See id.* at 153; *see also Hardy v. State*, 281 S.W.3d 414, 422 n.15 (Tex. Crim. App. 2009).

In *Morrison*, the court of appeals held that even though the appellant's vehicle was stopped in a roadway, there was still plenty of room for other cars to pass. *Morrison*, 71 S.W.3d at 828. Further, the court stated that no violation of the statute is proven "by evidence that shows the defendant only caused a slower passage or momentarily impeded progress." *Id.* Thus, the appellate court held that the appellant had not committed the offense of obstruction. *Id.*

Here—unlike in *Threadgill* and *Morrison* where the parked vehicles in question either were not in the road at all or allowed other vehicles safe passage along the other part of the road—McIntosh's parked 18-wheeler effectively blocked the roadway by

8

preventing other vehicles from safely driving around it. Based on the evidence introduced at trial, a rational trier of fact could have found that McIntosh's act of parking his 18-wheeler in the valley of the southbound lane of an unlit road during a foggy and misty night rendered the road impassable or created an unreasonably inconvenient or hazardous condition for any driver coming up behind it. *See* Tex. Penal Code Ann. § 42.03(b).

We overrule McIntosh's first and second issues.

## II.     The Jury Charge

In his third issue, McIntosh claims that the trial court erred by refusing to include his requested language in the jury charge. McIntosh requested that the jury charge include the following sentence from *Morrison*: "[N]o violation of the statute is proven 'by evidence that shows the defendant only caused a slower passage or momentarily impeded progress.'" 71 S.W.3d at 828. McIntosh argues that the language from *Morrison* is a proper defense to the charge of obstruction and, thus, should have been included in the jury charge. We disagree.

The fact that a driver merely caused "slower passage" or "momentarily impeded progress" involves nothing more than the presentation of evidence and argument that a defendant did not obstruct a roadway. In other words, this is simply the negation of the State's allegation that a defendant rendered the road impassable or rendered passage unreasonably inconvenient or hazardous. Tex. Penal Code Ann. § 42.03(b). Defensive issues that simply negate an element of the State's burden of

9

proof do not warrant special jury instructions. *Giesberg v. State*, 984 S.W.2d 245, 249 (Tex. Crim. App. 1998).

Additionally, a special instruction regarding "slower passage" or "momentarily impeded progress" would needlessly draw a jury's attention to evidence that might raise such a conclusion. Therefore, a special instruction on "slower passage" or "momentarily impeded progress" would constitute an unwarranted comment on the weight of the evidence by the trial court.[2] *See* Tex. Code Crim. Proc. Ann. art. 36.14 (stating that a jury charge should not express an opinion on the weight to be given to any of the evidence); *cf. Hawkins v. State*, 656 S.W.2d 70, 73 (Tex. Crim. App. 1983) (concluding that an instruction on the defense of good faith would be an improper comment on the weight of the evidence); *Waller v. State*, 581 S.W.2d 483, 484 (Tex. Crim. App. [Panel Op.] 1979) (noting that a jury-charge instruction on misidentification affirmative defense would have been an improper comment on the weight of the evidence); *Laws v. State*, 549 S.W.2d 738, 740 (Tex. Crim. App. 1977) (determining that instructions on mistaken identity would constitute improper comments on the weight of the evidence).

---

[2]Furthermore, because the authority to establish what constitutes a defense rests solely with the Legislature, a defense not recognized by the Legislature does not warrant a separate instruction. *Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990). The term *defense* should not be used for an issue that has not been specifically labeled as such by the Legislature. *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982) (op. on reh'g).

10

We conclude that McIntosh was not entitled to a separate jury instruction on "slower passage" or "momentarily impeded progress" because such an instruction would merely negate an element of the State's burden of proof and constitute an unwarranted comment on the weight of the evidence by the trial court.

We overrule McIntosh's third issue.

## III.  Motion for New Trial

In his fourth issue, McIntosh argues that the trial court abused its discretion by denying his motion for new trial.  Three days after the jury found McIntosh guilty of obstruction, a juror emailed McIntosh's defense counsel and stated that she did not believe that the State had proved its case beyond a reasonable doubt and that she only agreed to the guilty verdict to avoid a mistrial.  The email also included information about the jurors' initial opinions regarding McIntosh's guilt and explained the jurors' deliberation process.

McIntosh filed a motion for new trial claiming that "[t]he verdict did not reflect the actual opinion of the Jury and is not a fair expression of the juror's opinion."  McIntosh attached a copy of the juror's email to his motion, but he did not attach an affidavit setting out the basis for his claim.  The trial court denied McIntosh's motion for new trial.  McIntosh argues that the trial court's denial was an abuse of discretion.  We disagree.

11

### A.      Standard of Review

We review a trial court's denial of a motion for new trial for an abuse of discretion. *State v. Gutierrez*, 541 S.W.3d 91, 97–98 (Tex. Crim. App. 2017); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016); *State v. Boyd*, 202 S.W.3d 393, 401 (Tex. App.—Dallas 2006, pet. ref'd).  A trial court is given wide latitude in making the decision to grant or deny a motion for new trial.  *Boyd*, 202 S.W.3d at 401.

### B.      Applicable Law

A defendant must be granted a new trial or a new trial on punishment when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion.  Tex. R. App. P. 21.3(c).  However, a defendant who raises an issue not determinable from the record is not entitled to a hearing on his motion for new trial unless he "establishes the existence of 'reasonable grounds' showing that the defendant 'could be entitled to relief.'"  *Lucero v. State*, 246 S.W.3d 86, 95 (Tex. Crim. App. 2008) (holding that the trial court did not abuse its discretion by declining to hold a hearing on appellant's motion for new trial because the record presented no reasonable grounds to believe that the alleged jury misconduct affected the jury's verdict, and citing *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003)).  Thus, as a prerequisite to a hearing when the grounds in the motion are based on matters not in the record, the motion must be supported by an affidavit of either the defendant or someone else specifically setting out the factual basis for the claim.  *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009).  The affidavit need not

establish a prima facie case or even "'reflect every component legally required to establish' relief." *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993) (quoting *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985)); *see also Wallace*, 106 S.W.3d at 108 (stating that the defendant's motion and supporting affidavits "must merely reflect that reasonable grounds exist for holding that such relief *could* be granted" (emphasis added) (quoting *Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002)).

## C.     No Abuse of Discretion

McIntosh failed to attach an affidavit to his motion for new trial setting out the basis for the motion. Because he attached only the email—which was inadmissible hearsay—and did not attach the required affidavit, the trial court did not abuse its discretion by denying McIntosh's motion for new trial. *See Smith*, 286 S.W.3d at 339. Moreover, even if the contents of the email had been submitted to the trial court in an affidavit, the juror would have been prohibited from testifying to the matters contained in it by Texas Rule of Evidence 606(b). *See* Tex. R. Evid. 606(b) (stating that a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment, and the court may not receive a juror's affidavit or evidence of a juror's statement on these matters). The trial court did not abuse its discretion by denying McIntosh's motion for new trial. Accordingly, we overrule McIntosh's fourth issue.

13

## IV. Conclusion

Having overruled McIntosh's four issues, we affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 4, 2022