The STATE of Texas, Appellant,

v.

**Shawn Oneal BOYD, Appellee.**

No. 05–05–00914–CR.

Court of Appeals of Texas,
Dallas.

Aug. 28, 2006.

Rehearing Overruled Oct. 11, 2006.

Deric King Walpole, Boyd Veigel, P.C., McKinney, for Appellee.

John A. Stride, Collin County Dist. Atty's Office, Asst. Dist. Atty., McKinney, for Appellant.

M. Emily Johnson–Liu, McKinney, for State.

Before Justices RICHTER, LANG, and MAZZANT.

## OPINION

Opinion by Justice LANG.

The State of Texas appeals the trial court's post-verdict order granting Shawn Oneal Boyd's pre-verdict motion for mistrial.

In three issues, the State asserts the trial court abused its discretion when it granted Boyd's motion for mistrial because: (1) the trial court cured the error when it *sua sponte* instructed the jury to disregard; (2) Boyd forfeited his right to relief because he did not object to the evidence, request an instruction to disregard, or obtain a ruling on his motion before the jury returned its verdict; and (3) the trial court's ruling sanctioned unwarranted departures from the rules governing the orderly administration of criminal proceedings when it condoned Boyd's alleged improper gamesmanship.

Boyd responds that this Court does not have jurisdiction to reach the merits of the State's appeal because the order appealed from is an order granting a mistrial. The State replies that this Court has jurisdiction over the State's appeal under article 44.01(a)(3) of the Texas Code of Criminal Procedure because case law provides that when an order granting a mistrial is "functionally indistinguishable" from or the "functional equivalent" of an order granting a new trial the State may appeal pursuant to article 44.01(a)(3).

We conclude this Court has jurisdiction over this appeal. Also, we conclude the trial court did not abuse its discretion when it granted Boyd's motion for a mistrial. This Court's order staying the proceedings in the trial court pending the disposition of this appeal is vacated and the trial court's order granting Boyd's motion for mistrial is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Boyd was charged by information with the offense of driving while intoxicated. Also, the information contained an enhancement paragraph alleging a prior DWI conviction. Before trial, Boyd filed a motion *in limine* seeking a hearing outside the presence of the jury before the State referred to any of his prior convictions. However, the record does not show the trial court ruled on the motion *in limine*.

During the trial, the State offered Exhibit No. 2, the videotape of the defendant recorded from the officer's car, and Exhibit No. 3, the videotape of the defendant recorded in the intoxilyzer room. Boyd requested permission to voir dire the officer regarding State's Exhibit No. 2, which the trial court permitted. At the conclusion of Boyd's voir dire, the trial court admitted State's Exhibit Nos. 2 and 3, without an objection. After the videotapes were published to the jury, Boyd cross-examined the officer regarding the contents of the videotapes.

During jury deliberations, a juror brought to the bailiff's attention that State's Exhibit No. 3 was marked with a label that read: "DWI 2nd." [1] The bailiff reported his conversation with the juror to the trial court and stated the jury had the impression the case they were deliberating was Boyd's second DWI offense. The trial court brought the matter to the attention of Boyd and the State. Boyd did not object to the labels on the videotapes. After the trial court prepared an instruction to disregard, both the State and Boyd stated they had no objection to the instruction. Before the trial court instructed the jury to disregard the label on State's Exhibit No. 3, the bailiff informed the trial court the jury also brought to his attention that the label on State's Exhibit No. 2 read: "DWI 2nd." [2] Again, Boyd did not object.

The trial court *sua sponte*, verbally and in writing, instructed the jury that the labels on the videotapes were not in evidence and contained hearsay. Also, the trial court instructed the jury not to consider and to disregard any inference that the case involved a second DWI offense.

---

1. The label on State's Exhibit No. 3 was affixed to the edge or spine of the videotape and stated as follows (italics indicate the handwritten portions of the label):

 Defendant (last, first) *BOYD, SHAWN*
 Date *7-14-03* Charge *DWI-2nd*
 File #
 Agency *PLANO PD* Offense *03-81104*

2. The label on State's Exhibit No. 2 was affixed to the edge or spine of the videotape and stated as follows (italics indicate the handwritten portions of the label):

 Defendant (last, first) *Boyd, SHAWN*
 Date *7-14-03* Charge *DWI 2nd*
 Tape # 22522
 Agency *PLANO* Officer

Then, the trial court declared a recess, sent the jury home for the evening, and instructed the jury to be back at 8:30 a.m. the following morning. After the jury left for the day, Boyd moved for a mistrial. The trial court said, "Well, let's talk about that in the morning." The record does not reflect any discussion of Boyd's request for a mistrial the next morning. However, at 9:29 a.m., the jury returned to the courtroom with a guilty verdict, and the trial court adjourned.[3]

3. Specifically, the following occurred regarding the videotapes:

TRIAL COURT: One of the jurors brought it to the attention of Mr. Chacon [the bailiff] that State Exhibit No. 3 is marked "DWI 2nd." Anybody catch that? And so there's evidence of an extraneous offense before the jury, which was admitted by oversight by, I think, both of the attorneys that are involved in the case. So what's your position on that, Mr. Walpole [defense counsel]?

DEFENSE COUNSEL: Do we have a verdict?

TRIAL COURT: No verdict. They just sent that information out to Mr. Chacon.

DEFENSE COUNSEL: May I approach, Your Honor?

TRIAL COURT: Yes, sir. It's in evidence before the jury. The jury has it in the jury room. They've already looked at it. They know that this is a DWI second.

PROSECUTOR₁: See, I saw the "DWI 2nd" and it just occurred to me a second tape, so . . .

TRIAL COURT: And so—

DEFENSE COUNSEL: Is it the second tape?

PROSECUTOR₁: Yes.

PROSECUTOR₂: It is the second tape, yes. Can we just tell them it's the second tape?

TRIAL COURT: Do you want to let them keep deliberating?

DEFENSE COUNSEL: Judge, I mean, what are they—Mr. Chacon, are you getting the impression that they think that this is a DWI second?

BAILIFF: They have the impression that it's a second.

REPORTER: I'm sorry, Mr. Kim [prosecutor₂], I can't hear you.

PROSECUTOR₂: Your Honor, we admitted it into evidence after giving defense counsel an opportunity to inspect the tape, so . . .

DEFENSE COUNSEL: I don't know, Judge. What do you think?

TRIAL COURT: Well, we can continue to let them to [sic] deliberate or I can bring them back in and give them the instruction to disregard the language that's on the tape. I don't know what good that does in terms of curing an instruction to disregard—I mean, an extraneous offense.

DEFENSE COUNSEL: Well, would you be willing to suggest to them that, for all you know, that means it's a second tape?

PROSECUTOR₂: We're fine with that.

PROSECUTOR₁: We're fine with that.

PROSECUTOR₂: The first tape clearly doesn't have it.

TRIAL COURT: Well, I'm not going to do something that's dishonest, I mean, or misrepresent something to them.

DEFENSE COUNSEL: No, but just suggest there are other possibilities other than this is a second DWI, just like when you give alternate theories as to why a person wouldn't testify. Just say, you're not to consider this a second DWI. For all you know, it means it's a second tape.

TRIAL COURT: Well, I'll write up a charge, if you want [sic] to, and submit it to them, an additional instruction telling them not to concern themselves with evidence that's not before them, including language on this tape and then continue to deliberate.

DEFENSE COUNSEL: Whatever you can do, Judge.

TRIAL COURT: Okay. All right. Let me go back here and do that.

(Pause in proceedings.)

PROSECUTOR₂: No objection from the State, Your Honor.

DEFENSE COUNSEL: No objection, Judge.

TRIAL COURT: All right. I'm going to bring them in and read it to them and then we'll have them come back in the morning.

DEFENSE COUNSEL: Very good.

BAILIFF: All rise.

(Pause in proceedings.)

BAILIFF: Judge, it's on this tape, too. They brought this to my attention, also.

TRIAL COURT: Okay. Thank you. Go ahead and bring them in.

BAILIFF: All rise.

(Jury enters the courtroom at 5:47 p.m.)

TRIAL COURT: You may be seated, ladies and gentlemen. Members of the jury, I'm going to give you additional [sic] instruction, and then after that, we're going to

Twenty-one days after the jury returned the guilty verdict, the case was set for a hearing on punishment before the trial court and the following occurred:

TRIAL COURT: [A]re you ready on your sentencing hearing, motion for new trial, whatever it is?

DEFENSE COUNSEL: We're ready Your Honor. Judge, we do have a number of witnesses to swear in at this time as well.

TRIAL COURT: Are we going forward with the sentencing hearing, is that what we're doing?

DEFENSE COUNSEL: Well, Judge, right now I've got a—there is a motion in [sic] mistrial that's under advisement. Based on my interpretation of the Rules of Appellate Procedure, I believe that the motion for new trial would be more appropriately filed and urged after sentencing in the event the mistrial is not granted. So I believe that the

order of the proceedings should be [sic] ruling on the motion for mistrial, which we'd ask to argue briefly. If the motion for mistrial is denied, then move on to sentencing, and then I have a motion for new trial which has to be presented to the Court within ten days of filing it. I would ask to file that in open court, get it set for a hearing. I'm sure the State would want some notice. However, I would be prepared to proceed on it today.

TRIAL COURT: All right. [Boyd's] motion for mistrial is based on the fact that the videotape was marked "DWI 2nd" going back to the jury room?

DEFENSE COUNSEL: Yes, Your Honor.

TRIAL COURT: State's response.

PROSECUTOR: Your Honor, there was sufficient evidence to support the

declare a recess for the evening and come back in the morning.

The Court's Bailiff has brought to the attention of the Court that in reviewing State's Exhibit No. [sic] 2 and 3 that the jury noticed that the Exhibit is marked "DWI 2 nd"—that is both exhibits are marked "DWI 2nd." You are instructed that the label on State's Exhibit [sic] 2 and 3 is not in evidence, nor is the statement "DWI 2nd" contained on the labels in evidence. You are instructed that the label on State's Exhibit Nos. 2 and 3 contains hearsay of which no evidence was presented during the trial. Therefore, you're instructed that during your deliberations, you shall not consider, refer to or mention any of the hearsay statements contained on State's Exhibit No. 2 or No. 3 and you shall disregard any inference that this case involves a DWI second.

Ladies and gentlemen, we're going to declare a recess for the evening and have you come back at 8:30 in the morning to begin your deliberations.

(Proceedings held after jury left on. [sic] May 4, 2005:)

DEFENSE COUNSEL: Judge, I feel obligated to request a mistrial. It's on both tapes. There's only one explanation. It wasn't on the second tape. It was on both and I missed it, and you know, I'm not saying it's the State's fault, but it is a problem and I think a conviction would be inferred in this case and we would respectfully request a mistrial.

TRIAL COURT: Well, let's talk about that in the morning.

DEFENSE COUNSEL: Yes, sir.

TRIAL COURT: All right. See everyone back at 8:30 in the morning.

(Proceedings adjourned. The following. [sic] proceedings were held May 5, 2005:)

TRIAL COURT: Go ahead and bring in the jury, please, Mr. Chacon.

BAILIFF: All rise.

(Jury enters the courtroom at 9:29 a.m.)

TRIAL COURT: You may be seated. Good morning, ladies and gentlemen, welcome back. I'll read the jury's verdict now:

We, the jury, find Shawn Oneal Boyd guilty as charged in the Information.

verdict outside the DWI 2nd. The jury didn't have time to consider it until—the DWI 2nd until well into deliberations, and you did provide them with an instruction with which they were advised to take as law in this court and that should have been sufficient to cure the—and there is a presumption that it does cure it [sic] anything that comes in there that shouldn't.

TRIAL COURT: All right. The motion for mistrial is granted. So we'll set this case for trial again. When Ms. Andrews comes back, you can see Ms. Andrews, she'll give you a new trial date.

After the trial court orally granted Boyd's motion for mistrial, the trial court issued a written order, which states:

### ORDER GRANTING THE DEFENDANT'S MOTION FOR MISTRIAL

Following the jury's guilty verdict in this cause, this Court considered the Defendant's pending motion for mistrial and hereby orders it GRANTED. Therefore, the jury's guilty verdict is set aside and the cause is returned to the docket of this [C]ourt pending retrial.

The trial court reset this case for a jury trial one month after it declared the mistrial. However, the State announced "not ready" and moved for a continuance because of a missing witness. The case was again reset for a jury trial two months after the mistrial was granted, one month after the first resetting. Before the case came to trial, the State petitioned this Court for a writ of mandamus requesting an order staying the proceedings. This Court stayed the trial court's proceedings pending disposition of this appeal.

## II. APPELLATE JURISDICTION— THE STATE'S RIGHT TO APPEAL

Boyd argues this Court does not have jurisdiction to reach the merits of the State's appeal because the order appealed from is an order granting a mistrial. According to Boyd, the State may appeal only from the orders listed in article 44.01(a) of the Texas Code of Criminal Procedure and an order granting a mistrial is not included in the list. The State asserts that this Court has jurisdiction over the State's appeal under article 44.01(a)(3) because, in accordance with the applicable case law, an order granting a mistrial, like the order issued in this case, is "functionally indistinguishable" from an order granting a new trial, which the State may appeal pursuant to article 44.01(a)(3).

### A. Applicable Law

■ To accept an appeal, a court of appeals must have jurisdiction. *See State v. Johnson*, 843 S.W.2d 252, 254 (Tex.App.-Texarkana 1992), *aff'd*, 871 S.W.2d 744 (Tex.Crim.App.1994). The State is entitled to appeal in a criminal case as authorized by law. TEX. CONST. art. V, § 26; *State v. Evans*, 843 S.W.2d 576, 577 (Tex. Crim.App.1992) (en banc). Article 44.01 of the Texas Code of Criminal Procedure permits the State to appeal a trial court's order in a criminal case under limited circumstances. The "plain" language of article 44.01(a) is unambiguous. *See State v. Gutierrez*, 129 S.W.3d 113, 115 (Tex.Crim. App.2004).

Article 44.01(a) provides as follows:

(a) The [S]tate is entitled to appeal an order of a court in a criminal case if the order:

(1) dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint;

(2) arrests or modifies a judgment;

(3) grants a new trial;

(4) sustains a claim of former jeopardy;

(5) grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case; or

(6) is issued under Chapter 64.

TEX.CODE CRIM. PROC. ANN. art. 44.01(a) (Vernon Supp.2006). A new trial, as contemplated by Article 44.01(a)(3) of the Texas Code of Criminal Procedure, is "the rehearing of a criminal action after the trial court has, on the defendant's motion, set aside a finding or verdict of guilt." TEX.R.APP. P. 21.1; *Evans*, 843 S.W.2d at 577 (quoting former rule of appellate procedure).

■■ The Texas Code of Criminal Procedure provides no authority for the State to appeal an order granting a mistrial. *See State v. Garza*, 774 S.W.2d 724, 726 (Tex.App.-Corpus Christi 1989, pet. ref'd). However, the Texas Court of Criminal Appeals has determined that when an order is "functionally indistinguishable" from or the "functional equivalent" of an order granting a new trial, a reviewing court can look past the label assigned to the order by the trial court and treat the order as one granting a new trial. *See State v. Savage*, 933 S.W.2d 497, 499 (Tex.Crim. App.1996); *Evans*, 843 S.W.2d at 577; *see also Rodriguez v. State*, 852 S.W.2d 516, 518 (Tex.Crim.App.1993); *State v. Doyle*, 140 S.W.3d 890, 892 (Tex.App.-Corpus Christi 2004, pet. ref'd); *Sanchez v. State*, 990 S.W.2d 304, 306 (Tex.App.-Corpus Christi 1999, pet. ref'd); *Garza*, 774 S.W.2d at 726 (dictum); *State v. Kanapa*, 778 S.W.2d 592, 593 (Tex.App.-Houston [1

st Dist.] 1989, no pet.) (per curiam), *disapproved of on other grounds by Tatum v. State*, 846 S.W.2d 324, 327 (Tex.Crim.App. 1993) (per curiam). When determining its jurisdiction, an appellate court must look to the effect of the trial court's order. *Evans*, 843 S.W.2d at 577; *cf. State ex rel. Holmes v. Klevenhagen*, 819 S.W.2d 539, 542 (Tex.Crim.App.1991) (orig.proceeding) (en banc) (mere fact that order granting habeas corpus relief returns parties to previous posture does not give State authority to appeal that order because there is no provision in article 44.01 that authorizes appeal under that circumstance).

### B. Application of the Law to the Facts

■■ The facts of this case are unique. The line of Texas cases applying the "functionally indistinguishable" or "functional equivalent" standard has not addressed a pre-verdict motion for mistrial that was granted post-verdict. However, the Texas Court of Criminal Appeals has directed us to look to the effect of the trial court's order, not the title or label of the motion or order. *See Savage*, 933 S.W.2d at 499; *Evans*, 843 S.W.2d at 577. In compliance with that directive, we look to the substance of and the facts and circumstances surrounding the trial court's mistrial order.

Boyd moved orally for a mistrial before the jury returned a verdict. He described it as a motion for mistrial. The trial court, not Boyd, allowed the motion to be "carried" past the jury's "guilty" verdict and until the punishment hearing. Then, at the punishment hearing, on defense counsel's renewed oral motion for mistrial, the trial court orally pronounced its declaration of a mistrial. The trial court's written order stated it granted a mistrial and that "the cause [wa]s returned to the docket

... pending retrial." Further, the case was reset for a jury trial one month after the trial court declared the mistrial.

■ We conclude the timing of Boyd's motion for a mistrial is not pivotal for determining this Court's jurisdiction. Instead, it is the timing of the trial court's order setting aside the verdict of guilty that is determinative of this Court's jurisdiction. As the Texas Court of Criminal Appeals stated in *Evans*, "a post-verdict ruling which returns the case to the posture in which it had been before trial is functionally indistinguishable from an order granting a new trial." *Evans*, 843 S.W.2d at 578. Accordingly, the trial court's order granting Boyd's motion for a mistrial is functionally indistinguishable from an order granting a new trial, and this Court has jurisdiction over the State's appeal.

### III. ORDER GRANTING A NEW TRIAL

In issues one through three, the State argues the trial court abused its discretion when it granted Boyd's motion for mistrial because: (1) the trial court cured the error when it *sua sponte* instructed the jury to disregard; (2) Boyd forfeited his right to relief because he did not object to the evidence, request an instruction to disregard, or obtain a ruling on his motion before the jury returned its verdict; and (3) the trial court's ruling sanctioned unwarranted departures from the rules governing the orderly administration of criminal proceedings when it condoned Boyd's improper gamesmanship.

#### A. Standard of Review

In this case, the order granting a mistrial was functionally indistinguishable from or the functional equivalent of an order granting a new trial. Therefore, an appellate court must look to the standards governing the review of an order granting a new trial. *See Yates v. State*, 171 S.W.3d 215, 220–21 (Tex.App.-Houston [1 st Dist.] 2005, pet. ref'd) (motion for mistrial functional equivalent of motion for new trial; therefore, look to standards governing review of granting or denial of motion for new trial).

When the State appeals a trial court's order that grants a motion for new trial, an appellate court reviews the trial court's decision for an abuse of discretion. *See State v. Gonzalez*, 820 S.W.2d 9, 12 (Tex. App.-Dallas 1991), *aff'd*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993) (en banc). An abuse of discretion occurs when the trial court's decision was arbitrary or unreasonable. *See State v. Read*, 965 S.W.2d 74, 77 (Tex.App.-Austin 1998, no pet.). Accordingly, an appellate court will not substitute its judgment for that of the trial court. *See State v. Garza*, 143 S.W.3d 144, 148 (Tex.App.-San Antonio 2004, pet. ref'd); *State v. Kelley*, 20 S.W.3d 147, 150 (Tex. App.-Texarkana 2000, no pet.). Rather, an appellate court will examine the record to determine whether the trial court granted a new trial in an arbitrary manner without reference to any guiding rules or principles. *See State v. Ordonez*, 156 S.W.3d 850, 851 (Tex.App.-El Paso 2005, pet. filed); *see also State v. Massey*, 132 S.W.3d 68, 70 (Tex.App.-Eastland 2004, no pet.) (appellate court examines record to determine whether trial court's order granting new trial falls within zone of reasonable disagreement).

■ A trial court is given wide latitude in making the decision to grant or deny a motion for new trial. *See State v. Krueger*, 179 S.W.3d 663, 666–67 (Tex. App.-Beaumont 2005, no pet.); *State v. Mercier*, 164 S.W.3d 799, 810 (Tex.App.-Corpus Christi 2005, pet. ref'd). A trial court's ruling granting a motion for new trial is presumed to be correct and the

burden rests on the appellant to establish the contrary. *See Lee v. State,* 167 Tex. Crim. 608, 322 S.W.2d 260, 262 (1958); *Kelley,* 20 S.W.3d at 150; *State v. Gill,* 967 S.W.2d 540, 541 (Tex.App.-Austin 1998, pet. ref'd). In the absence of an abuse of discretion, an appellate court is not justified in reversing an order granting a new trial. *See Gonzalez,* 855 S.W.2d at 696. A trial court's order granting a new trial will be reversed only when the trial court's decision was clearly wrong and lies outside the zone of reasonable disagreement. *See id.* at 695 n. 4; *Kelley,* 20 S.W.3d at 150; *Read,* 965 S.W.2d at 77.

### B. Trial Court Cured Error

In its first issue, the State argues the trial court erred when it granted Boyd's motion for mistrial because the trial court cured the error when it *sua sponte* instructed the jury to disregard. The State contends that instructions to disregard are presumed effective, and there is nothing in the record to show the jurors could not understand the instruction to disregard or that they did not follow it. Boyd responds that it was reasonable for the trial court to find that the evidence complained of was clearly calculated to inflame the minds of the jury. He asserts the labels on the videotapes were of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury because evidence of a prior DWI in a trial for the offense of DWI tends to show conformity. Further, Boyd contends the labels on the videotapes have no other probative value, and the evidence supporting his guilt was weak.

### 1. Applicable Law

 Texas Rule of Appellate Procedure 21.3 does not provide an exclusive list of the grounds for granting a new trial. *See Gonzalez,* 855 S.W.2d at 694. A trial court may in its discretion grant a motion for new trial in the interest of justice. *See id.* When the trial court determines that justice has not been done, it has not only the power, but also the obligation to order a new trial. *State v. Trevino,* 930 S.W.2d 713, 716 (Tex.App.-Corpus Christi 1996, pet. ref'd).

 The general rule is that error in admitting improper evidence may be corrected by withdrawal of the evidence and an instruction to disregard it. *See Norton v. State,* 771 S.W.2d 160, 167 (Tex. App.-Texarkana 1989, pet. ref'd). In the vast majority of cases, the evidence complained of has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the defendant. *See id.* In those situations, a prompt instruction to disregard will ordinarily cure the prejudicial effect and the jury is presumed to follow the trial court's instruction to disregard the improperly admitted evidence in the absence of evidence indicating the members of the jury failed to do so. *See id.; see also Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999); *Dixon v. State,* 64 S.W.3d 469, 475 (Tex. App.-Amarillo 2001, pet. ref'd); *Gibson v. State,* 29 S.W.3d 221, 225 (Tex.App.-Houston [14 th Dist.] 2000, pet. ref'd). However, when the evidence is of a material character and is calculated to influence or affect the jury, its withdrawal from the jurors' consideration will not cure the vice of its admission. *See Music v. State,* 135 Tex.Crim. 522, 528, 121 S.W.2d 606, 609–10 (1938); *Norton,* 771 S.W.2d at 167. An instruction to disregard will not cure the error of improperly admitted evidence of an extraneous offense when that evidence establishes exactly what the State is trying to prove. *See Music,* 135 Tex.Crim. at 527–28, 121 S.W.2d at 609 (where defendant on trial for burglary, instruction to

disregard improper evidence that his associates were thieves did not cure error).

## 2. Application of the Law to the Facts

 While the jurors were deliberating, a juror brought to the bailiff's attention the fact that the labels stated "DWI 2nd." The bailiff told the trial court the jury had the impression the case they were deliberating was Boyd's second DWI offense. The trial court discussed the matter with the State and Boyd, and noted that "there's evidence of an extraneous offense before the jury, which was admitted by oversight, I think, by both of the attorneys that are involved in the case." Neither the State nor Boyd disputed the trial court's statement. The trial court stated it would prepare an instruction to disregard, but expressed reservations regarding its effectiveness, stating "I don't know what good that does in terms of curing an instruction to disregard—I mean, an extraneous offense."

After the trial court prepared the instruction to disregard, it advised counsel of the language it would use, and both the State and Boyd stated they had no objection to the trial court's instruction. The trial court called the jury into the courtroom and verbally instructed them to disregard the labels on the videotapes and any inference that the case involved a second DWI offense. Also, the trial court submitted a written charge to the jury, which contained the same instruction to disregard.

After the trial court instructed the jury to disregard, Boyd's counsel moved for a mistrial stating, "I think a conviction can be inferred in this case from [the markings on the labels] and we would request a mistrial." The trial court stated they would address the motion "in the morning." The record does not reflect any discussion of Boyd's motion for mistrial the following morning before the jury returned its verdict of "guilty."

Twenty-one days later, before the commencement of the hearing on punishment, Boyd reasserted his motion for mistrial, which we concluded was functionally indistinguishable from or the functional equivalent of a motion for new trial. The trial court held a hearing. Boyd did not present any evidence or argument other than his claim that the motion was based on the fact that the videotapes admitted into evidence were marked "DWI 2nd" and were in the jury room during deliberations. The State also elected not to present evidence to controvert Boyd's allegation that the extraneous offense evidence revealed on the labels of the videotapes prejudiced the jury. Instead the State merely argued: (1) there was sufficient evidence to support the jury's verdict; (2) the trial court instructed the jury to disregard, which was sufficient to cure the error; and (3) there is a presumption that it cured the error.

 The trial court's ruling granting the motion for mistrial, which we concluded was functionally indistinguishable from or the functional equivalent of a motion for new trial, is presumed to be correct, and it is the State's burden to establish the contrary. See Kelley, 20 S.W.3d at 150; Gill, 967 S.W.2d at 541. We are bound to look at the evidence in the light most favorable to the trial court's order granting a new trial, and we will not substitute our judgment for that of the trial court. See State v. Balderas, 915 S.W.2d 913, 919 (Tex. App.-Houston [1 st Dist.] 1996, pet. ref'd). Boyd was on trial for DWI. The labels on the videotapes contained improper extraneous offense evidence of a prior DWI offense, and the trial court was aware the jury had the impression the case was Boyd's second DWI. Moreover, the trial court was in the best position to assess the

effect of its instruction to the jury. As a result, it was not outside the zone of reasonable disagreement for the trial court to conclude the instruction to disregard the labels on the videotapes did not cure the error. *See Music,* 135 Tex.Crim. at 527–28, 121 S.W.2d at 609. To the extent the State argues the trial court cured the error when it *sua sponte* instructed the jury to disregard, on this record, we conclude the trial court did not abuse its discretion when it granted Boyd's motion for a mistrial.

The State's first issue is decided against it.

### C. Failure to Object or Request an Instruction to Disregard

In issue two, the State argues Boyd forfeited his right to relief because he did not object to the evidence, request an instruction to disregard, or obtain a ruling on his motion before the jury returned its verdict. Boyd responds that he moved for a mistrial as soon as he learned of the evidence and before the jury returned its verdict.

#### 1. Applicable Law

The general requirement for preservation of error is set forth in Texas Rule of Appellate Procedure 33.1(a). *See* Tex. R.App. P. 33.1(a). To preserve a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion. *See* Tex.R.App. P. 33.1(a)(1). Also, to preserve an issue for appellate review, an appellant must obtain a ruling from the trial court on his motion or, if the trial court refused to rule on the motion, object to the trial court's refusal to rule. *See* Tex.R.App. P. 33.1(a)(2).

#### 2. Application of the Law to the Facts

The State attempts to place the burden of preserving error on Boyd. However, preservation of error applies to the party asserting the error, i.e., the appellant, not the appellee. The State's issues on appeal claim the trial court erred when it granted Boyd a new trial. The State offers no authority that supports placing the burden of preserving error for appellate review on the appellee. Accordingly, we decide against the State on its second issue.

### D. Improper Gamesmanship

In issue three, the State argues the trial court improperly sanctioned unwarranted departures from the rules governing the orderly administration of criminal proceedings when, post-verdict, it granted Boyd's pre-verdict motion for mistrial. According to the State, the trial court's order condoned improper gamesmanship because it disregarded the integrity of the jury's verdict, it permitted Boyd to second-guess his failure to object to evidence during the trial, and it allowed Boyd to gamble on a favorable verdict before obtaining relief. Boyd responds that he did not seek to engage in gamesmanship, but to correct the inadvertent admission of extraneous offense evidence. He contends that any gamesmanship that occurred was on the part of the State when it tendered an exhibit that contained highly prejudicial evidence. Boyd acknowledges the potential problems associated with post-verdict orders granting a motion for mistrial, but maintains he moved properly for a mistrial before the verdict was returned.

#### 1. Applicable Law

Criminal proceedings are not contests of clever gamesmanship or trial by ambush. *See Jaubert v. State,* 74 S.W.3d 1, 4–5 (Tex.Crim.App.2002) (Coch-

ran, J., concurring). Neither the State nor the defense should be permitted to engage in gamesmanship. *See Hayden v. State,* 66 S.W.3d 269, 273 n. 16 (Tex.Crim.App. 2001). The line between legitimate adversarial gamesmanship and improper methods should be difficult for most attorneys to cross, unless they do so on purpose. *See Bauder v. State,* 921 S.W.2d 696, 700 (Tex.Crim.App.1996) (en banc). An appellate court should not limit the trial court's discretion under the circumstances of this case and should defer to the trial court's ability to recognize when gamesmanship is being employed. *See State v. Sosa,* 830 S.W.2d 204, 205 (Tex.App.-San Antonio 1992, pet. ref'd).

## 2. Application of the Law to the Facts

 During the proceedings it was learned that the labels on both videotapes read "DWI 2nd." When the trial court brought to the State and Boyd's attention that the label on State's Exhibit No. 3 referenced an extraneous offense, it stated that the evidence "was admitted by oversight by, I think, both of the attorneys that are involved in the case." Neither the State nor Boyd disputed the trial court's statement. When defense counsel moved for a mistrial, he also acknowledged the error was inadvertent. The State did not dispute defense counsel's assertion that the error was a mistake. There is nothing in the record to suggest that either defense counsel or the State crossed the line between legitimate adversarial conduct and improper gamesmanship through purposeful conduct. *See Bauder,* 921 S.W.2d at 700. Accordingly, we decide the State's third issue against it.

## IV. CONCLUSION

This Court has jurisdiction to reach the merits of the State's appeal because the trial court's order granting a mistrial is functionally indistinguishable from an order granting a new trial. Also, the trial court did not abuse its discretion when it granted Boyd's motion for a mistrial.

This Court's July 5, 2005 order staying the proceedings in the trial court pending the disposition of this appeal is vacated.

The trial court's "Order Granting the Defendant's Motion for Mistrial" is affirmed.