**Affirm and Opinion Filed January 4, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01133-CR

**THE STATE OF TEXAS, Appellant**
**V.**
**DARIN JOHNSON, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F17-75869-V**

## MEMORANDUM OPINION

Before Justices Molberg and Carlyle[1]
Opinion by Justice Molberg

A jury convicted appellee Darin Johnson of engaging in organized criminal activity and assessed punishment at ninety years' confinement. *See* TEX. PENAL CODE § 71.02(a). Johnson timely filed a motion for new trial and appealed. He also filed an amended motion for new trial, claiming his trial counsel provided him with ineffective assistance. After his trial counsel testified, the trial court issued a two and one-half page order discussing and applying *Strickland v. Washington*, 466 U.S.

---

[1] The Honorable John G. Browning, Justice, participated in the oral argument and submission of this case but not in the issuance of the opinion, which occurred after the expiration of his term on December 31, 2020. *See* TEX. R. APP. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.")

668 (1984), and granting Johnson a new trial. Finding no abuse of discretion in that decision, we affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## BACKGROUND

This is at least our second opinion in appeals arising from these underlying events—or third, if counting an appeal by Johnson's brother, Jalvis Bernard Johnson, whose case was tried together with Johnson's.[2] The jury found both of them guilty and assessed punishment for each of them at ninety years' confinement.[3]

The indictment charged Johnson with engaging in organized criminal activity by committing and conspiring to commit aggravated robbery "with intent to establish, maintain, and participate in a combination and in the profits of a combination." The State's evidence included testimony of a Dallas police detective who assisted in investigating numerous 2016 home invasion robberies committed in a similar manner. The investigation identified eighteen people, including Johnson and Jalvis, as "collaborating together" on those multiple robberies.

During the guilt-innocence phase of the trial, the State called a total of seventeen witnesses. Of these, six were complainants, two were accomplices, and nine were members of law enforcement. Johnson and Jalvis did not testify.

---

[2] This is the second appeal we have handled in Johnson's case. Johnson filed his first appeal before the trial court granted him a new trial. Once the trial court did so, Johnson sought to dismiss that appeal, and we issued a memorandum opinion dismissing the appeal for want of jurisdiction. *See Johnson v. State*, No. 05-19-00582-CR, 2019 WL 3812059 (Tex. App.—Dallas Aug. 14, 2019) (mem. op., not designated for publication). We also handled an appeal filed by Johnson's brother, Jalvis. *See Johnson v. State*, No. 05-19-00583-CR, 2020 WL 2537197 (Tex. App.—Dallas May 19, 2020, pet. refused).

[3] We refer to appellee as "Johnson" and to his brother as "Jalvis" throughout this opinion.

None of the complainants who testified identified Johnson as being at the scene of the home invasions. Though the State also presented certain cell phone evidence, the evidence placing Johnson at any of the crime scenes came primarily from the testimony of the two accomplice witnesses, Keenan Johnson and Zachary Dixon, who testified after being offered plea deals in connection with their truthful testimony in this trial.

Pertinent to this appeal is the testimony of Dixon and another witness, Barrett Nelson. Both testified about certain details regarding Johnson's criminal history, including his prior incarceration in federal prison, a prior arrest, and a separate federal warrant.

Dixon was the State's ninth witness and was one of the two accomplice witnesses who testified about committing the charged offenses with Johnson and Jalvis. During his direct-examination, Dixon referred at least three times to Johnson's prior incarceration in federal prison. First, Dixon testified:

[PROSECUTOR]: How long have you known Darin Johnson?

[DIXON]: A few years, but I can't really say how many. We kind of really met in federal prison. I knew his mom from when I was young, but I met him about 2010, 2011, something like that, in federal prison.

Dixon referred again to Johnson's incarceration when asked about his own efforts to retrieve items from Johnson's house for the purpose of selling them. When he was shown a photo of a gun stolen in connection with the charge being tried, he testified about later retrieving it from Johnson's house, stating:

[PROSECUTOR]: And State's Exhibit 222, you retrieved this from where?

[DIXON]: East Waco.[4]

[PROSECUTOR]: And why did you go to East Waco to get it?

[DIXON]: Because when [Johnson] got incarcerated, his little girlfriend came and told me that he needed some money on his books. . . . I like went over there to help her get all his stuff, get the guns. I was supposed to sell all the guns and put some money on his books, but I was only able to sell maybe like four or five guns, and I gave her the money for it.

In response to another question about the same gun, Dixon testified, in part:

His mother really the one really begged me to go over there and get it because she said she needed some money too to help her move. And he had told me when I got most of the money, to give her the money to help her move too and put the rest on his books.

Later, Dixon again referred to Johnson's prior incarceration, stating he "met him in federal prison like 2010, 2011," when the prosecutor asked him to confirm that he'd known Johnson for an extended period of years.

Johnson's counsel—Charles F. Allan—did not object to any of this evidence.

Allan also failed to object when Dixon was cross-examined by Jalvis's counsel and the following exchange occurred:

[JALVIS' COUNSEL]: And you said that you met [Johnson] in federal prison, right?

[DIXON]: Yes, sir.

[JALVIS' COUNSEL]: Did you get along with him then?

---

[4] Dixon testified that Johnson lived in a house on East Waco.

[DIXON]:  We got along until he started doing a lot of stealing and, you know, doing a lot of other crazy stuff.  And then they found out -- well, . . . he had -- in federal prison, they kind of do what you call a check to see if you snitched on somebody or something like that, and if you do, you got to go up top.  And they -- up top is basically like you go to lockup.  And come to find out, they said he cooperated on his federal sentence so that's why he was sent up top.

Then, when Allan cross-examined Dixon, after asking Dixon about his own conviction and sentence in federal prison, Allan asked him, "And that's where you met Darin?"—to which Dixon replied, "Yes, sir."

Four witnesses later, the State called Barrett Nelson, a police officer for the City of Dallas who was assigned to the U.S. Marshal's fugitive task force at the time of Johnson's apprehension and arrest.  During his testimony, Nelson testified twice about an earlier arrest of Johnson.  Near the beginning of his testimony, he stated:

[PROSECUTOR]:  Well, I'm just going to ask you how you became involved in the attempted apprehension of Darin Johnson.

[NELSON]:  We've, we, meaning the U.S. Marshal task force, we've had two occasions where we've had to arrest the defendant.  First time was 2014.

Later, when the prosecutor asked Nelson about efforts to apprehend and arrest Johnson in 2017, Nelson referred again to Johnson's earlier arrest.  Specifically, after Nelson testified he saw Johnson on top of a roof, the prosecutor and Nelson stated:

[PROSECUTOR]:  So you saw, you saw Darin Johnson where?

[NELSON]:  On top of the roof.

[PROSECUTOR]:  How does he get on to the roof, if you know?

[NELSON]:  There's . . . this is an old Oak Cliff home, so it's a very small home.  It's like that room is very small, but it had a window to it.

–5–

From what we found out later on, he opened that window and came out on top of the roof. That's when the police officers behind us started yelling.

We pulled back. I looked up and yelled at him . . . Because I know him from my time in the gang unit and my time arresting him in the past . . . come on down. We negotiated for a couple minutes. He agreed to come down. We grabbed him, pulled him down, and handcuffed him at that point in time. We passed him on to patrol because we still had to get inside the house because we had individuals inside the house.

Allan did not object to any of this evidence from Nelson.

However, sometime later, and after at least one other witness testified, Allan discussed Dixon's and Nelson's evidence with the trial court, both in an off-the-record bench conference and, a day later, in an on-the-record discussion, when the following exchange occurred:

THE COURT: Let's go on the record. This is the State versus Darin and Jalvis Johnson. The record should reflect that we are outside the presence of the jury.

Yesterday Mr. Allan[5] approached the Court on behalf of Darin Johnson. Mr. Allan, I'll let you articulate for the record the concern that you had yesterday.

MR. ALLAN: Yes, Your Honor.

I think unintentionally by the State, testimony came in, I know, from Zachary Dixon . . . that he knew one or both of the defendants from federal prison. And then there were more, there was more than one mention of imprisonment in federal prison. And then Officer Shirley who was attempting to -- who took Darin into custody when he was

---

[5] Allan's name is spelled as "Allen" in these portions of the reporter's record, but for accuracy, consistency, and easier reading, we have used "Allan," the correct spelling, without notating each of those changes.

arrested in February, testified that he had arrested him before[6] and that they were acting on a federal warrant.

I believe all of these were improper, should have been inadmissible. I apologize before for not objecting at the time, but I would request an instruction to the jury at this time.

THE COURT: All right. I'm sure there's strategic reasons why you waited. Maybe to not draw attention to it, I'm not sure, but --

MR. ALLAN: Exactly.

Once the jury was present, the trial judge informed the jury he had found the evidence inadmissible and instructed the jury to disregard Dixon's testimony about Johnson allegedly being in a federal institution with Dixon and to disregard Officer Nelson's or Officer Shirley's references to a previous arrest or warrant for Johnson.

The trial continued, and ultimately, the jury found Johnson and Jalvis guilty of engaging in organized criminal activity and assessed each of their punishments at ninety years' confinement. *See* TEX. PENAL CODE § 71.02(a).

After judgment was entered, Allan filed a motion for new trial and a notice of appeal for Johnson. The court appointed him new counsel, who filed an amended motion for new trial, arguing that Allan had provided him ineffective assistance by failing to object to evidence from numerous witnesses regarding his prior incarceration and prior bad acts.

---

[6] Officer Shirley testified after Nelson. Both were involved with Johnson's arrest. Based on their testimony the day before this exchange, the prior arrest reference appears to refer to Nelson's testimony.

–7–

The trial court heard Johnson's amended motion for new trial on July 9, 2019. Allan testified in the hearing and answered several questions from Johnson's new counsel about why he did not object to certain testimony at trial.

For Nelson's comments about Johnson's prior arrest and for some of Dixon's testimony regarding Johnson's prior time in federal prison, Allan explained that he "didn't want to draw attention to" the comments. For other portions of Dixon's testimony, Allan stated his reason for not objecting was "more complicated" because he knew that the fact that Johnson "had been arrested for these home invasion robberies . . . was going to be coming out as a major piece of the State's case in chief on guilt/innocence."

When discussing part of Dixon's testimony about putting money on Johnson's "books," the following exchange occurred:

> [JOHNSON'S NEW COUNSEL]: Why not ask to approach the Bench to put a stop to the questions and answers that we keep getting about the federal [penitentiary] at that point?
>
> [ALLAN]: I don't, I don't really have an answer for that. We did eventually have a bench conference regarding those questions.

Next, Johnson's counsel asked the trial court to take judicial notice of the bench conference that took place at the conclusion of testimony on May 1, 2019, to which the trial court responded, "Okay." Johnson's counsel then asked Allan whether he recalled the substance of that bench conference, and Allan responded, "Pretty much," and then described it as follows:

[ALLAN]: The judge, I believe, first turned to [one of the prosecutors] and said, you know, If you elicit another improper question, I'm going to declare a mistrial, and, and then turned to me and said, Why aren't you objecting. And I was, I didn't have a really good answer. I have, I believe I apologized to the Court for being slow to object. But the best answer I could give the Court and then I'm able to give you today is the not wanting to draw attention to these things that Mr. Dixon was blurting out it seemed to me clearly to the surprise of the State. That's, I think, in the record that I said, I believe these were through no fault of [the prosecutor].

Allan was then asked about the conference with the court that occurred on the record the next day, and in response to a question asking Allan to state his "trial strategy" for the record, Allan replied:

That objecting after the testimony has been given in my opinion does little good. It generally just draws attention to those remarks, and, you know, as the expression goes, the jury can't unhear it once they've heard it. So an instruction to disregard to me has, you know, a very limited value.

Only Allan testified at the hearing on Johnson's amended motion for new trial. Both sides' counsel argued their positions on the motion, and the trial court took it under advisement at the conclusion of the hearing.

Ten days later, the trial court entered a two and one-half page, single-spaced, thirteen-footnote order granting Johnson's motion. Among other things, the order refers to portions of Dixon's and Nelson's testimony, the inadmissibility of that testimony, Johnson's counsel's failure to object to the testimony, the bench conference about that testimony, and the court's later instruction to the jury to

disregard it. In addition to other cases,[7] the order acknowledged that the court was bound by the two-part test in *Strickland* and applied it, finding, in part, that "jurors improperly learned from two different witnesses that [Johnson] was a thief, a snitch, a federal prisoner in 2010 or 2011 [and] had also been arrested in 2014 by the U.S. Marshal's office," that "[c]ounsel's performance fell below the standard of professional norms,"[8] and that "counsel's performance 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'"[9]

## DISCUSSION AND ANALYSIS

In its sole issue on appeal, the State argues the trial court abused its discretion in granting Johnson a new trial because, according to the State, Johnson failed to establish ineffective assistance or prejudice as required by *Strickland*.

### *Motions for New Trial*

Rule 21.3 of the rules of appellate procedure lists several grounds requiring a trial court to grant a new trial, but those grounds are illustrative, not exhaustive. *See* TEX. R. APP. P. 21.3; *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993)

---

[7] For example, in footnote three of the order, the trial court cites *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996), correctly noting that "[t]o succeed on an ineffective assistance claim, the defense must demonstrate that if counsel had objected, the trial court would have erred in overruling the objection."

[8] In footnote five of the order, the trial court cited several cases for this conclusion, including *Ex Parte Robertson v. State*, 187 S.W.3d 475, 485-486 (Tex. Crim. App. 2006); *Ex Parte Menchaca*, 854 S.W.2d 128, 132 (Tex. Crim. App. 1993); and *Ruth v. State*, 522 S.W.2d 517, 519 (Tex. Crim. App. 1975), and included various parenthetical comments regarding these cases.

[9] In footnote thirteen of the order, the trial court cited *Strickland*, 466 U.S. at 686, for this conclusion.

–10–

(en banc) (interpreting earlier, similar rule). A defendant may move for a new trial based on ineffective assistance of counsel. *See Reyes*, 849 S.W.2d at 815. When a trial court grants a new trial in a criminal matter, the State may appeal. TEX. CODE CRIM. PROC. art. 44.01(a)(3).

We review a trial court's grant or denial of a motion for new trial for an abuse of discretion. *State v. Gutierrez*, 541 S.W.3d 91, 97–98 (Tex. Crim. App. 2017); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016); *State v. Boyd*, 202 S.W.3d 393, 401 (Tex. App.—Dallas 2006, pet. ref'd). Trial courts are given wide latitude in granting motions for new trial. *Boyd*, 202 S.W.3d at 401.

We view the evidence in the light most favorable to the trial court's ruling and give almost total deference to the court's findings of fact. *Gutierrez*, 541 S.W.3d at 98. We also defer to the trial court's credibility choices and presume that all reasonable fact findings in support of the ruling have been made. *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014).

The test is not whether, in our opinion, "the facts present a suitable case for the trial court's action," but rather, "whether the trial court acted without reference to any guiding rules or principles." *Simpson*, 488 S.W.3d at 322. We are not to substitute our judgment for the trial court's and instead examine the record to determine whether the trial court's decision was made in an arbitrary manner without reference to any guiding rules or principles. *Boyd*, 202 S.W.3d at 401 (citations omitted). The bare fact that a trial court may decide a matter differently than we

would does not demonstrate an abuse of discretion. *Simpson*, 488 S.W.3d at 322 (citing *Thomas*, 428 S.W.3d at 103–04).

A trial court abuses its discretion "only if its ruling is not supported by any reasonable view of the record." *Gutierrez*, 541 S.W.3d at 98. We reverse the trial court's ruling only when the decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Simpson*, 488 S.W.3d at 322 (citing *Webb v. State*, 232 S.W.2d 109, 112 (Tex. Crim. App. 2007)); *Boyd*, 202 S.W.3d at 402 (citations omitted). A trial court's ruling granting a motion for new trial is presumed to be correct, and as the appellant, the State has the burden to establish otherwise. *Boyd*, 202 S.W.3d at 401–02 (citations omitted).

*Ineffective Assistance of Counsel*

Sixth Amendment ineffective assistance of counsel claims require a defendant to show his counsel was deficient and that counsel's deficient performance prejudiced him. *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (citing *Strickland*, 466 U.S. at 688, 694); *see* U.S. CONST., amend VI. For deficient performance, a defendant must show that "'counsel's representation fell below an objective standard of reasonableness.'" *Id*. (quoting *Strickland*, 466 U.S. at 688). For prejudice, a defendant must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *id*.

–12–

(quoting *Strickland*, 466 U.S. at 694).[10]  *Strickland* rejects the notion that this is an "outcome determinative" test.  466 U.S. at 693.  *Strickland* also states, "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.

## APPLICATION

The State argues that the trial court erred in granting Johnson a new trial because he failed to establish that his counsel's failure to object to the evidence in question met either of the *Strickland* prongs.  According to the State, because Johnson's trial counsel provided an objectively valid reason for not objecting to the challenged evidence, and because Johnson's trial outcome was the same as that of his brother Jalvis, a separately represented codefendant, neither *Strickland* prong was met, and the trial court abused its discretion in granting Johnson's motion.

We disagree.  First, while the State cites the correct review standards regarding motions for new trial, the State appears to encourage us not to apply them—practically at least—considering that its arguments would seem to have us reconsider the ruling by imposing our own view of the evidence.  We decline the implicit invitation to do so, as it would be contrary to the review standards we are to

---

[10] Where jury unanimity is required, such prejudice can be established when "there is a reasonable probability that 'at least one juror would have struck a different balance' regarding the defendant's 'moral culpability.'"  *See id.* at 1886 (quoting *Wiggins v. Smith*, 539 U.S. 510, 537–38 (2003) ("because [the] sentence required a unanimous jury recommendation . . . prejudice here requires only a 'reasonable probability that at least one juror would have struck a different balance' regarding . . . 'moral culpability.'")

–13–

follow. *See Simpson*, 488 S.W.3d at 322 (test is whether trial court acted without reference to any guiding rules or principles, not whether the facts present a suitable case for the trial court's action); *Boyd*, 202 S.W.3d at 401 (we are not to substitute our judgment for trial court's and instead examine the record to determine whether court's decision was made arbitrarily without reference to any guiding rules or principles); *State v. Kelley*, 20 S.W.3d 147, 151 (Tex. App.—Texarkana 2000, no pet.) (in reviewing order granting motion for new trial based on ineffective assistance, we review trial court's application of *Strickland* factors through abuse of discretion prism and do not consider them de novo) (citing *State v. Gill*, 967 S.W.3d 540, 542 (Tex. App.—Austin 1998, pet. ref'd)).

Mindful of the proper review standards, the record, and the trial court's order in this case, we conclude that the trial court's ruling was within the zone of reasonable disagreement and was therefore not an abuse of discretion. The State has directed us to no cases compelling or convincing us to conclude otherwise.

We overrule the State's sole issue.

### CONCLUSION

We affirm the court's July 19, 2019 order and remand the case for a new trial.

/Ken Molberg/
KEN MOLBERG
JUSTICE

191133f.p05
Do Not Publish
TEX. R. APP. P. 47.2

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-19-01133-CR     V.

DARIN JOHNSON, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F17-75869-V. Opinion delivered by Justice Molberg. Justice Carlyle participating.

Based on the Court's opinion of this date, the trial court's order of July 19, 2019 is **AFFIRMED**, and we **REMAND** the case for a new trial.

Judgment entered this 4th day of January, 2021.