**Affirmed and Opinion Filed December 28, 2022**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00791-CR**

**BRANDAN ALEXANDER MUNOZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F20-75470-T**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Myers

Appellant Brandon Alexander Munoz was indicted for capital murder and a jury convicted him of the lesser-included offense of murder. He was sentenced to forty years in prison. In two issues, he challenges the sufficiency of the non-accomplice evidence and argues the trial court erred in not granting a mistrial. We affirm.

### DISCUSSION

### I. Sufficiency of Non-Accomplice Evidence

In his first issue, appellant argues that because there was no proper corroboration of accomplice witness Blayze Simpson, the evidence is insufficient to

establish his guilt beyond a reasonable doubt.

In reviewing the sufficiency of the corroborative evidence, we exclude the accomplice testimony from our consideration and examine the remaining portions of the record to ascertain whether there is evidence that tends to connect the accused to the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); *Medrano v. State*, 421 S.W.3d 869, 883 (Tex. App.—Dallas 2014, pet. ref'd). Thus, the question here is whether there is evidence tending to connect appellant with the offense without considering the testimony of Simpson.

A challenge of insufficient corroboration is not the same as a challenge of insufficient evidence to support the verdict as a whole. *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. Ap. 1999); *Cantelon v. State*, 85 S.W.3d 457, 460 (Tex. App.—Austin 2002, no pet.). Because the standard is "tendency to connect," rather than a rational sufficiency standard, the corroborating evidence need not be sufficient by itself to establish guilt beyond a reasonable doubt. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). "[C]ircumstances that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone*, 253 S.W.3d at 257. Also, "[t]here need be only some non–accomplice evidence tending to connect the defendant to the crime, not to every element of the crime." *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007). Nor is the evidence required to link the defendant directly to the crime. *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). If the combined weight of the non-accomplice evidence tends to

–2–

connect the defendant to the offense, article 38.14 is fulfilled. *Cathey*, 992 S.W.2d at 462.

Appellant was accused of intentionally causing the death of Emilio Paez by shooting him with a firearm while committing and attempting to commit the offense of robbery. The evidence showed Evelyn Banda was Paez's girlfriend. At around 2:30 a.m. on the morning of March 6, 2020, she heard Paez scream "babe." Still half asleep, she ran towards the kitchen of their apartment and saw Paez leaning on the counter. She asked him what happened, and he told her to call 911. She went to the bedroom to retrieve her phone, and when she returned to the kitchen Paez was on the floor having difficulty breathing. She saw that the door had been kicked in and the door handle was broken. She examined Paez to look for "spots" to put pressure on and noticed he was bleeding. She also saw Paez's gun on the floor beside him. Banda acknowledged that Paez smoked "weed" but denied he sold drugs.

Banda knew of a man named James Davis who was a friend of Paez. She testified that Paez gave Davis money from time to time to help with Davis's baby, and that when Paez died Davis "owed [him] for months already."

Eric Cho, who was married to Paez's sister, testified that Davis told him he was in the apartment with Paez when four guys (three black and one white) kicked in the door and started shooting. Davis told Cho he fled instead of calling 911. Cho knew that Paez sold "wax," a concentrated form of marijuana, and Cho believed

Davis was there to buy wax.

Blayze Simpson was also indicted for capital murder, and he testified with his attorney present that he, appellant, Davis, and Michael (also called Truman) Gray were involved in the murder, and that he and appellant had gone to middle school together. Davis met on March 5, 2020 with Simpson, Gray, and appellant to discuss robbing someone who only Davis knew. They all agreed to commit the robbery, and they chose to rob Paez because Davis told them "[Paez] had wax that he was selling and had a lot of it or whatever." Their intent was only to rob, not hurt anyone. However, they were all armed: Simpson had an AK-47 and the others carried pistols. They were all at the apartment door when appellant kicked it in, and as soon as that happened Simpson heard gunshots and ran. He did not see appellant or Gray shoot. Simpson and Gray ran to the car and drove off. Simpson did not see appellant or Davis leave.

The evidence included State's exhibit 155, surveillance footage from Paez's apartment parking lot. Simpson testified that Davis's white vehicle could be seen on State's Exhibit 155 entering the parking lot followed by the black Jeep carrying appellant, Simpson, and Gray. Simpson testified that Davis's vehicle was backing into a parking space when they realized Paez was outside, so they staged a fake confrontation between Davis and Gray. Simpson testified that the recording showed himself and Gray running towards the Jeep and driving off, and then Davis running to and driving away in his vehicle, followed by appellant chasing after the cars.

–4–

Simpson testified that Davis drove back to pick up appellant. After that, they all returned to Simpson's home, where appellant told them that upon kicking in the door, he was shot in the forearm. They removed a bullet fragment from appellant's arm and wrapped it in bandages, then everyone left. The following day, Davis told everyone Paez had died.[1]

Dallas police took photographs of the crime scene and collected evidence, which included shell casings. There were sixteen fired cartridge casings at the scene from two different caliber weapons—fourteen 9 mm casings and two .40 caliber casings. The firearm found at the scene was a .40 caliber pistol. The shell casings suggested rapid fire in a specific area.

Affording proper deference to the jury's fact resolution, we conclude the non-accomplice evidence was sufficient to tend to connect appellant to the murder of Paez. The record includes video evidence showing four individuals arriving at and then fleeing the crime scene, and one of them can be seen holding his arm. Appellant argues that Dallas Police Homicide Detective Jeffrey Loeb, assigned to investigate Paez's murder, could not identify appellant on the video. But the jurors had the opportunity to observe appellant and were free to determine if he could be seen on the video. Moreover, the crime scene analyst testified that there were two .40 caliber bullet casings found at the scene. The only "defect" (i.e., a possible bullet hole) in

---

[1] Simpson was unaware Davis was already talking to the police.

the apartment near the door can be found in the ceiling—labeled defect "P" on State's exhibit 161, a diagram of the crime scene prepared by the Dallas Police. The jurors could have reasonably determined that the "P" defect was the result of one shot fired by Paez and that his second .40 caliber shot did not result in a defect inside the apartment because it struck appellant's arm. Other evidence tending to connect appellant to the crime included his jail admission and medical record. Appellant's jail admission forms show he had a gunshot wound on his left forearm. The jail records indicate that three bullet fragments were removed. The photographs of appellant's arm taken by Detective Loeb on March 11, 2020, five days after the murder, show a gunshot wound on appellant's left forearm—supporting the conclusion that he received that wound during the offense.

"[C]ircumstances that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. 2008). "Similarly, 'proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.'" *Smith v. State*, 332 S.W.3d 425, 442–43 (Tex. Crim. App. 2011) (quoting *Richardson v. State*, 879 S.W.2d 874, 880 (Tex. Crim. App. 1993)).

The cumulative force of the non-accomplice evidence in this case, giving proper deference to the jury's resolution of the facts, tends to connect appellant to the crime. *E.g.*, *Smith*, 332 S.W.3d at 442–43. We therefore conclude the jury could

have rationally found that the corroborating evidence tended to connect appellant to Paez's murder, and we overrule his first issue.

## II. Request for a Mistrial

In his second issue, appellant argues that because appellant gave no witness statement to the police, the trial court erred in failing to grant a mistrial after the State's lead detective testified that appellant "had plenty of opportunity to explain himself to me."

The record shows that during the direct examination of Detective Loeb, defense counsel asked to take the detective on voir dire, and the following exchange occurred:

Q. [DEFENSE COUNSEL:] Okay. You weren't there when Mr. Paez was shot, were you?

A. I was not there.

Q. So anything you tell this jury is something someone else told you, correct?

A. Some of it's corroborated through video, but yes.

Q. Okay. You—you saw a surveillance video, there's—the surveillance video was not on—it doesn't cover the shooting, does it?

A. That is correct.

Q. So anything you tell them about how someone got into an apartment or why someone got into an apartment came from someone else, correct?

A. Yes. Came from—I—everyone had the same opportunity to explain to me. I talked to two—I got statements from two of the four. Your client had plenty of opportunities to explain himself to me.

[DEFENSE COUNSEL]: Judge, I'm going to object to him commenting on my client's right to remain silent.

THE COURT: Right.

[DEFENSE COUNSEL]: And I'd ask the jury to disregard. And I'd ask for a mistrial.

THE COURT: Okay. Detective, just make sure you're answering the questions without the extra—

THE WITNESS: Okay.

THE COURT: —comments being made.

THE WITNESS: Yes, Your Honor.

THE COURT: And I'll ask you-all to disregard those statements.

Q. [DEFENSE COUNSEL:] Anything that you tell them comes from someone else, correct?

A. Unless I physically did it.

[DEFENSE COUNSEL]: Okay. That's all I have, Judge.

THE COURT: Okay. Thank you.

We review a trial court's decision to deny a mistrial under an abuse of discretion standard. *See Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App.2004); *see also Dukes v. State*, 239 S.W.3d 444, 450 (Tex. App.—Dallas 2007, pet. ref'd). An appellate court must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).

A mistrial is an extreme remedy for prejudicial events occurring during the trial process. *See Archie*, 221 S.W.3d at 699 (quoting *Hawkins v. State*, 135 S.W.3d

72, 77 (Tex. Crim. App. 2004)).  The appropriate test for determining whether a trial court abused its discretion when it denies a motion for a mistrial is a tailored version of the Mosley test.  *See Archie*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 77 (discussing *Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998)).  The *Mosley* factors that are considered when determining whether a trial court abused its discretion when it denied a mistrial are: (1) the severity of the misconduct (the magnitude of the prejudicial effect); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the trial court); and (3) the certainty of conviction absent the misconduct.  *See Archie*, 239 S.W.3d at 700.

A comment on a defendant's post-arrest silence violates the defendant's rights under the Fifth Amendment of the United States Constitution and article I, section 10 of the Texas Constitution.  *See Perez v. State*, 187 S.W.3d 110, 112 (Tex. App.— Waco 2006, no pet).  But a prompt instruction to disregard will ordinarily cure the prejudicial effect.  *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The jury is presumed to follow the trial court's instruction to disregard improperly admitted evidence in the absence of evidence indicating the members of the jury failed to do so.  *See State v. Boyd*, 202 S.W.3d 393, 402 (Tex. App.—Dallas 2006, pet. ref'd).  A mistrial is required only when the improper question or evidence is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *See Ladd*, 3 S.W.3d at 567; *see also Perez*, 187 S.W.3d at 113.  The harm flowing

from a comment on a defendant's post-arrest silence can be cured by an effective instruction to disregard. *See Perez*, 187 S.W.3d at 113.

Applying the above factors, the statement in this case was made by a witness who was responding to a question posed by defense counsel. There is no misconduct on the part of the State; thus, the improper statement cannot not be imputed to the State. Moreover, the improper statement was not repeated by the witness or the State. Additionally, the trial court provided a prompt instruction to the jury to disregard and admonished the witness to answer the question posed and refrain from further comment. Based on the record in this case, the detective's comment was not so blatant that an instruction to disregard would fail to cure the error and diffuse any harm to appellant. We therefore overrule appellant's second issue.

We affirm the trial court's judgment.

/Lana Myers//

210791f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)

LANA MYERS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BRANDAN ALEXANDER
MUNOZ, Appellant

No. 05-21-00791-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F20-75470-T.
Opinion delivered by Justice Myers.
Justices Pedersen, III and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.

Judgment entered this 28th day of December, 2022.