**Affirmed and Opinion Filed May 4, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01362-CR

**DAMON DESHAWN FINLEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 069342**

## MEMORANDUM OPINION
Before Justices Molberg, Goldstein, and Smith
Opinion by Justice Molberg

Damon Deshawn Finley was charged with and found by a jury to be guilty of aggravated assault causing serious bodily injury with a deadly weapon—family violence and injury to a child causing serious bodily injury. The jury assessed his punishment at thirty years' confinement in prison, and the trial court entered judgment. Finley then filed a motion for new trial, claiming ineffective assistance of counsel. The trial court denied the motion. Finley claims this denial was an abuse of discretion and urges us to reverse and remand for a new trial. Finding no abuse of discretion, we affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

BACKGROUND

In a three-count indictment, the State charged Finley with committing various offenses in relation to A.F., his daughter, on or about January 5, 2018, a date when A.F. was approximately nine weeks old. Finley pleaded not guilty and was appointed counsel. The case was tried to a jury.

At trial, the State proceeded on the first two counts and withdrew the third.[1] Count one of the indictment alleged that Finley did "intentionally, knowingly, or recklessly cause serious bodily injury to [A.F.], by shaking [her], causing blunt force trauma to her the exact means being unknown, by hitting her with his hand, by throwing her down or by any combination of any of the preceding, and did then and there use or exhibit a deadly weapon, to-wit: [his] hand or hands or any surface upon which [A.F.] was thrown, or anything used to cause blunt force trauma, during the commission of the assault, and [A.F.] was a member of [his] family or household as described by sections 71.003 or 71.0005 of the Texas Family Code."

Count two of the indictment alleged that Finley did "intentionally or knowingly cause serious bodily injury to [A.F.], a child [fourteen] years of age or younger, by shaking [her], causing blunt force trauma to her the exact means being unknown, by hitting her with his hand, by throwing her down[,] or by any combination of the preceding."

---

[1] Count three of the indictment had charged Finley with the attempt to commit capital murder of A.F.

The trial lasted four days. Witnesses in the guilt/innocence phase included A.F.'s mother and maternal grandmother; Finley's best friend and cousin; and various medical, law enforcement, and child protective services (CPS) personnel.

One of the medical doctors who testified in the guilt/innocence phase was Suzanne Dakil, M.D., a child abuse pediatrician at UT Southwestern Medical Center in Dallas, Children's Medical, and director of their REACH program.[2] She testified that on January 6, 2018, other UT Southwestern physicians consulted her about A.F. because of concerns regarding injuries that included rib fractures and "areas of hemorrhage inside [A.F.'s] head" that "were felt to have occurred at two separate times."[3] The history Dr. Dakil was given was that A.F. had been with Finley while her mom was out at work.

The jury also heard testimony from a local police officer, Corporal Eric Withrow,[4] who testified that on January 8, 2018, CPS contacted him about A.F., and he conducted an investigation. The jury heard that he met with Dr. Dakil on January 9, 2018, as part of that investigation, and Dr. Dakil told him that in her expert opinion, A.F.'s injuries were the result of being shaken on multiple occasions. At trial, Dr. Dakil testified that A.F.'s injuries were the result of abusive head trauma.

---

[2] Dr. Dakil testified that REACH "stands for Referral and Evaluation of At Risk Children" and that the REACH program is a child maltreatment clinic treating children on both an inpatient and outpatient basis in situations where concerns of abuse or neglect exist.

[3] Dr. Dakil stated these were "subdural hemorrhages" which she described as "[b]leeding around the brain underneath the dura," which is "a thick protective membrane that sits around the brain."

[4] At the time of the investigation, Withrow was an investigator in the Sherman Police Department's criminal investigations division.

Also as part of the investigation, Withrow contacted Finley's maternal grandmother to arrange an interview with her. She agreed to come speak to Withrow, and she told Withrow that Finley and his best friend also wished to come speak to him as well.

On January 12, 2018, Withrow spoke to A.F.'s maternal grandmother, Finley's best friend, and Finley. Withrow interviewed Finley for about an hour, and the interview was recorded. A redacted video of Finley's interview was admitted into evidence and was played for the jury.

When Withrow was asked about certain admissions Finley made in the interview about his treatment of A.F, Withrow testified that Finley's description of two instances of him physically and intentionally shaking A.F. was consistent with A.F.'s injuries as those injuries were documented and explained to him. Withrow testified that, based on his training regarding child abuse and Finley's admissions, he obtained an arrest warrant and arrested Finley on January 16, 2018.

At the conclusion of the guilt/innocence phase, the jury found Finley guilty of counts one and two as charged in the indictment. After the punishment phase, the jury assessed Finley's punishment at thirty years' confinement in the Texas Department of Criminal Justice's Institutional Division.

Counting both phases of trial, the jury heard from a total of fourteen witnesses, eleven of whom were called by the State. Finley's trial counsel cross-examined all eleven and made various objections during their testimony. The State offered all of

the twenty-one exhibits admitted into evidence, one over Finley's trial counsel's objection. Finley's trial counsel called three witnesses to testify during the punishment phase.[5]

Following the jury's verdict, the trial court entered judgment and certified Finley's right to appeal. Finley then filed both a motion for new trial and a notice of appeal. In his motion for new trial, Finley argued a new trial was warranted because his trial counsel deprived him of effective assistance of counsel in five ways, two of which Finley raises in his single issue in this appeal.

The trial court heard Finley's motion for new trial on November 1, 2019. At the hearing, the trial court admitted into evidence one exhibit offered by the State[6] and seven offered by Finley's new counsel. The first of Finley's exhibits was an affidavit by Dr. Amy Gruszecki, a forensic pathologist, who Finley's trial counsel consulted with before and during trial but who did not testify. In her affidavit, Dr. Gruszecki provided opinions about certain differential diagnoses and provided an opinion on shaken baby syndrome (SBS), which she described as a "concept" that "was not based on any scientific evidence but on antidotal [sic] accounts and circular

---

[5] Finley's counsel called no witnesses to testify before the jury during the guilt/innocence phase. However, during that phase, and outside the jury's presence, Finley testified that his trial counsel had advised him of his right not to testify and that Finley had chosen not to exercise that right.

[6] The State's exhibit consisted of the State's response to Finley's motion for new trial and affidavits by three individuals: Dr. Dakil, Finley's trial counsel, and Dr. Teresa Rockhill, M.D., the attending obstetrician for A.F.'s mother before, during, and after A.F.'s birth in November 2017. Although A.F.'s mother testified that a "tool" was used "to pull [A.F.] out by her head, like tongs," Dr. Rockhill's affidavit indicates that "neither forceps nor any suction was used at any time during [A.F.'s mother's] delivery."

reasoning." The trial court also heard testimony from Finley's two live witnesses: Finley's trial counsel, Jeromie Oney, and Michelle Brown, a private investigator who assisted Oney in this case.

According to Brown, during her research, she became aware there was a controversy about SBS, and she submitted that information to Oney by e-mail. Brown testified that, for her own personal benefit, she wanted to learn more about SBS, so she researched some articles and gave three of them to Oney.[7] She also attended Oney's interview with Dr. Gruszecki, and when asked during the hearing whether there was ever any discussion of literature that calls into question SBS, she testified, "I do not recall."

Oney, who testified live and by affidavit, said he and Dr. Gruszecki discussed the controversy involving SBS.[8] In his ten-page affidavit,[9] Oney provided information about various strategies he pursued, decisions he made, communications he had with Dr. Gruszecki, and his reasoning before and during trial.

In his live testimony, Oney confirmed receiving and reviewing three SBS-related articles from his investigator. Oney also agreed he did not contest causation, and in response to questions by Finley's new counsel, he testified, in part:

> Q. Well, when you say "strategy," your strategy was to concede causation, to not challenge it; notwithstanding, you knew that there was

---

[7] These three articles were admitted into evidence as defense exhibits four, five, and six.

[8] When asked whether he "discussed in detail and comprehensively the controversy surrounding [SBS]" during the in-person meeting he and Dr. Gruszecki had before trial, he answered, "Yes, sir."

[9] Oney's affidavit is included in State's exhibit one, which was admitted into evidence.

–6–

a raging controversy in the medical community about shaken baby syndrome in general. Was that your strategy?

A. Correct. After discussing it with Dr. Gruszecki, it wasn't just a shaking issue, in our mind, in her mind, once we discussed it because the issue wasn't just the subdural hematomas. You had other injuries involved, and so that's why the strategy developed the way it did.

. . . .

Q. How is it a strategy to stipulate causation with not even contesting it?

A. Because that came from the fact that to stipulate – I use that word because it's your word – but stipulating causation, because like I stated earlier, each individual injury, to separate it and say that each individual injury was – the bones were brittle bones, and the subdural hematomas were caused by something else. Dr. Gruszecki's opinion from the beginning was because of the amount of injuries, that it couldn't point to a natural cause, and there was no evidence of there being an accident in this case. And so, you have to – to do that, to break it down and try to sell the rare circumstance based on each individual injury, almost serves to undermine your credibility because the high percentage chance of each of those being a unique situation.

On cross examination by the State, Oney testified:

Q. All right. So, as you are considering trial strategy, sir, you indicated that based on all of these injuries, and what Dr. Gruszecki was saying, and her qualifications are of record with the affidavit, that she was saying there is a very, very likelihood this is abuse, I'm not going to say this was accidental, correct?

A. Correct.

Q. How many times did she indicate to you this child had been injured minimum?

A. It was her opinion at least three.

Q. Three times. And so, she wanted – you had a choice of trying to sponsor in front of a jury that somehow this child had suffered all these constellation of injuries three separate times somehow, right?

A. Yes, sir.

Q. But, there was nothing of note that you could point to other than possible childbirth that would explain any of them, correct? No history, no facts, right?

A. Not reported by the parties, no, sir.

At the end of the hearing, the court took Finley's motion under advisement. Three days later, on November 4, 2019, the court entered an order denying Finley's motion. The order did not explain the ruling in any detail but simply stated, in part, that the court, "after hearing the argument of the parties and having reviewed the motion and the evidence presented, finds that the motion should be DENIED."

### DISCUSSION AND ANALYSIS

In a single issue, Finley argues the trial court abused its discretion in denying his motion for new trial because trial counsel was ineffective for failing to argue and present certain evidence and for failing to investigate the medical and factual basis relating to [A.F.'s] injuries. The State, in contrast, argues the trial court did not abuse its discretion because neither of the *Strickland* prongs was satisfied in the motion for new trial hearing. *See Strickland v. Washington*, 466 U.S. 668 (1984).

### *Motions for New Trial*

Rule 21.3 of the rules of appellate procedure lists several grounds requiring a trial court to grant a new trial, but those grounds are illustrative, not exhaustive. *See* TEX. R. APP. P. 21.3; *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993)

(en banc) (interpreting earlier, similar rule).  A defendant may move for a new trial based on ineffective assistance of counsel.  *See Reyes*, 849 S.W.2d at 815.

We review a trial court's grant or denial of a motion for new trial for an abuse of discretion.  *State v. Gutierrez*, 541 S.W.3d 91, 97–98 (Tex. Crim. App. 2017); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016); *State v. Boyd*, 202 S.W.3d 393, 401 (Tex. App.—Dallas 2006, pet. ref'd).  A trial court is given wide latitude in making the decision to grant or deny a motion for new trial.  *Boyd*, 202 S.W.3d at 401 (citation omitted); *State v. Mercier*, 164 S.W.3d 799, 810 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd).

In ruling on a motion for new trial, we apply a deferential standard of review. *Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021). The trial court is the exclusive judge of the credibility of the evidence presented at the motion for new trial hearing.  *Id.*  We also defer to the trial court's credibility choices and presume that all reasonable fact findings in support of the ruling have been made.  *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014).

In doing so, we "afford almost total deference to a trial court's fact findings, view the evidence in the light most favorable to the trial court's ruling, and reverse the ruling only 'if no reasonable view of the record could support' it."  *Id.* (quoting *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013)).  In the absence of express findings, we must presume all findings in favor of the prevailing party. *Najar*, 618 S.W.3d at 371 (citing *Okonkwo*, 398 S.W.3d at 694).  We will reverse

–9–

the trial judge's ruling "only if we discern an abuse of discretion, that is, if the ruling is arbitrary or unsupported by any reasonable view of the evidence." *Id.*

*Ineffective Assistance of Counsel*

Sixth Amendment ineffective assistance of counsel claims require a defendant to show his counsel was deficient and that counsel's deficient performance prejudiced him. *Ex Parte Garza*, No. WR-78, 113-01, 2021 WL 1397860, at *4 (Tex. Crim. App. Apr. 14, 2021) (citing *Strickland*, 466 U.S. at 687); *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (citation omitted); *see* U.S. CONST., amend VI.

A defendant can establish deficient performance by showing that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation." *Garza*, 2021 WL 1397860, at *4 (citing *Strickland*, 466 U.S. at 687–88, 690 and *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)).

In analyzing this, "we must make every effort to 'eliminate the distorting effects of hindsight.'" *Id.* (quoting *Wiggins*, 539 U.S. at 523). Moreover, when reviewing a claim of inadequate investigation, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* (quoting *Wiggins*, 539 U.S. at 521–22).

To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[10] A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

## APPLICATION

In a single issue, Finley argues the trial court abused its discretion in denying his motion for new trial because his trial counsel was ineffective, he asserts, by "failing to argue and present evidence relating to the State's expert's reliance on the junk science of shaken baby syndrome," and for failing to investigate the medical and factual basis relating to A.F.'s injuries. Essentially, Finley maintains that, due to A.F.'s medical history, including her history regarding her birth and previous hospitalizations, it was impossible to conclude to a reasonable degree of medical certainty that intentional abuse was the cause of her injury. Finley frames his trial counsel's efforts as a concession on causation and as a failure to investigate or present a viable scientific defense, and with regard to the two *Strickland* prongs, he argues that his trial counsel's efforts were deficient and call into question any confidence in the underlying proceeding. Finley asks that we reverse and remand the case for a new trial.

---

[10] Where jury unanimity is required, such prejudice can be established when "there is a reasonable probability that 'at least one juror would have struck a different balance' regarding the defendant's 'moral culpability.'" *See id.* at 1886 (quoting *Wiggins v. Smith*, 539 U.S. 510, 537–38 (2003) ("because [the] sentence required a unanimous jury recommendation . . . prejudice here requires only a 'reasonable probability that at least one juror would have struck a different balance' regarding . . . 'moral culpability.'")

–11–

In contrast, the State asks that we affirm, arguing that the trial court did not err in denying Finley's motion for new trial because the record lacks evidence showing that Finley's trial counsel's efforts fell below an objective standard of reasonableness under prevailing professional norms (i.e. that Finley's efforts were deficient) and that but for those deficiencies, the results would have been different (i.e. that Finley was harmed), both of which are required by *Strickland*.

Based on the record before us and the deferential review standards we are to apply, we conclude that the trial court did not abuse its discretion in denying Finley's motion for new trial. There is no indication that the trial court acted without reference to any guiding rules or principles or reached any conclusions outside the zone of reasonable disagreement under either *Strickland* prong. *See Najar*, 618 S.W.3d at 371 (court will reverse ruling on motion for new trial only if no reasonable view of the record could support it); *Simpson*, 488 S.W.3d at 322 (test is not whether the facts present a suitable case for the trial court's action but instead whether trial court acted without reference to any guiding rules or principles); *Boyd*, 202 S.W.3d at 401 (appellate court may not substitute its judgment for trial court's; instead, appellate court examines the record to determine whether court's decision was made arbitrarily without reference to any guiding rules or principles); *State v. Kelley*, 20 S.W.3d 147, 151 (Tex. App.—Texarkana 2000, no pet.) (in reviewing order on motion for new trial based on ineffective assistance, we review trial court's application of *Strickland* factors through abuse of discretion prism and do not

–12–

consider them de novo) (citing *State v. Gill*, 967 S.W.3d 540, 542 (Tex. App.—

Austin 1998, pet. ref'd)).

## CONCLUSION

We overrule the sole issue before us and affirm the trial court's order of

November 4, 2019.

/Ken Molberg/
KEN MOLBERG
191362f.u05                                  JUSTICE


Do Not Publish
Tex. R. App. P. 47.2



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAMON DESHAWN FINLEY,
Appellant

No. 05-19-01362-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 15th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. 069342.
Opinion delivered by Justice
Molberg. Justices Goldstein and
Smith participating.

Based on the Court's opinion of this date, the trial court's November 4, 2019 order is **AFFIRMED**.

Judgment entered this 4th day of May, 2021.